Laurie Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
LEdelstein@jenner.com

Kate T. Spelman (CA Bar No. 269109)
Jenna L. Conwisar (CA Bar No. 341521)
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: (213) 239-5100
KSpelman@jenner.com
JConwisar@jenner.com

David Layden (IL Bar No. 6216417; *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
DLayden@jenner.com

*Counsel for Defendant OpenAI Global, LLC*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMARGO COUTURE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPENAI GLOBAL, LLC,<br><br>Defendant. | Case No. 3:26-cv-03000-H-GC<br><br>The Honorable Marilyn L. Huff<br><br>**DEFENDANT OPENAI GLOBAL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Courtroom: 12A<br>Date: November 2, 2026<br>Time: 10:30 a.m. |

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 2, 2026 at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 12A of the United States District Court for the Southern District of California, located at the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, CA 92101, before the Honorable Marilyn L. Huff, Defendant OpenAI Global, LLC ("OpenAI") will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff Amargo Couture's First Amended Complaint ("FAC") in its entirety with prejudice because it fails to state a claim on which relief can be granted.

OpenAI moves to dismiss the FAC on the grounds that as a ChatGPT, Facebook, and Google user, Plaintiff affirmatively consented to the activities that form the basis of her FAC, precluding all her claims. Additionally, Plaintiff fails to allege the necessary elements to state any of her claims. Because amendment would be futile, the FAC should be dismissed in its entirety with prejudice for failure to state a claim.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, OpenAI's Request for Judicial Notice and attached Exhibits 1 to 16, all documents in the Court's file, and any further argument or evidence that OpenAI may offer in its reply brief in support of this motion or otherwise present to the Court.

Respectfully submitted,

Dated: August 19, 2026

JENNER & BLOCK LLP

By: */s/ Laurie Edelstein*
Laurie Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
LEdelstein@jenner.com

Kate T. Spelman (CA Bar No. 269109)
Jenna L. Conwisar (CA Bar No. 341521)
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: (213) 239-5100
KSpelman@jenner.com
JConwisar@jenner.com

David Layden (IL Bar No. 6216417; *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
DLayden@jenner.com

*Counsel for Defendant OpenAI Global, LLC*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. ChatGPT and Its Terms of Use ..... 2

B. Facebook and Google and Their Terms of Use ..... 4

C. Plaintiff's Allegations ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. PLAINTIFF'S CONSENT BARS ALL OF HER CLAIMS. ..... 7

A. Plaintiff Consented to OpenAI's Terms and Privacy Policy, Which Inform Users of Its Collection and Disclosure of Data. ..... 8

B. Plaintiff Agreed to Facebook's and Google's Terms, Which Expressly Disclose the Alleged Data Practices. ..... 11

II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ECPA. ..... 12

A. Plaintiff Makes No Plausible Allegations of Interception During Transmission. ..... 12

B. The ECPA Only Requires One-Party Consent. ..... 15

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 631(a). ..... 16

A. Clause One Does Not Apply to Internet Communications. ..... 17

B. Plaintiff Does Not Plausibly Allege Interception "In Transit." ..... 18

IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 632. ..... 19

A. Plaintiff Does Not Allege OpenAI Eavesdropped/Recorded or Intended to Assist Google or Meta in Doing So. ..... 19

B. ChatGPT Query Topics Are Not Confidential Communications Under § 632(c). ..... 21

V. PLAINTIFF'S COMMON LAW CLAIMS FAIL. ..... 23

A. Plaintiff Had No Reasonable Expectation That Her Query Topics Would Not Be Shared with Meta or Google. ..... 24

B. OpenAI's Alleged "Intrusion" Was Not Highly Offensive to a Reasonable Person. ..... 24

VI. PLAINTIFF SHOULD NOT BE PERMITTED LEAVE TO AMEND. ..... 25

CONCLUSION ..... 25

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 21-2416, 2021 WL 4805435 .......... 12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Bradley v. Google, Inc.*,
No. 06-5289, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) .......... 18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 19

*Casey v. U.S. Bank Nat. Assn.*,
127 Cal. App. 4th 1138 (2005) .......... 20

*Chemehuevi Indian Tribe v. Newsom*,
919 F.3d 1148 (9th Cir. 2019) .......... 17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) .......... 25

*Daniels–Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 14

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 18, 23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 16, 17, 24

*In re Google Inc. Gmail Litig.*,
No. 13-2430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....15

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022).... 11, 19

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014).... 10, 24

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)....17

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024).... 12, 18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....24

*Jones v. Skullcandy, Inc.*,
No. 25-1759, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026)....23

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025).... 8, 10, 15, 25

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008)....7

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020)....10

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)....17

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....14

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023)....16

*Lorenzo v. United States*,
719 F. Supp. 2d 1208 (S.D. Cal. 2010)....7

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................... 21, 24

*Matera v. Google Inc.*,
No. 15-4062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ............................18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................................................... 15, 19

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)..........................................................................10

*Ortiz v. Deckers Outdoor Corp.*,
No. 25-9631, 2026 WL 1243675 (N.D. Cal. May 6, 2026)..............................14

*People v. Super. Ct. of L.A. Cnty*,
70 Cal. 2d 123 (1969).......................................................................................20

*Pyankovska v. Abid*,
65 F.4th 1067 (9th Cir. 2023)...........................................................................15

*Ramos v. The Gap, Inc.*,
No. 23-4715, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ............................17

*Ribas v. Clark*,
38 Cal. 3d 355 (1985).......................................................................................16

*Rodriguez v. Google LLC*,
No. 20-4688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)...............................14

*Rosenow v. Facebook, Inc.*,
No. 19-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020).............................14

*Semien v. PubMatic Inc.*,
No. 25-3164, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026)...............................12

*Silver v. Stripe Inc.*,
No. 20-8196, 2021 WL 3191752 (N.D. Cal. July 28, 2021)........................ 8, 10

*Sisti v. Bosley Inc.*,
No. 25-10669, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ...........................13

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,
88 F.3d 780 (9th Cir. 1996)................................................................................7

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)........................................................................8

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)..............................................................20

*Stoba v. Saveology.com, LLC*,
No. 13-2925, 2014 WL 3573404 (S.D. Cal. July 18, 2014) ...............................20

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999)..........................................................................15

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023)..............................................................21

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ............................................................19

*United States v. Stratton*,
229 F. Supp. 3d 1230 (D. Kan. 2017) ..............................................................22

*United States v. Weber*,
599 F. Supp. 3d 1025 (D. Mont. 2022) ............................................................22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)..............................................................14

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)...................................................21

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)..............................................................14

*Washington v. Flixbus, Inc.*,
No. 25-212, 2025 WL 1592961 (S.D. Cal. June 5, 2025)......................... 8, 9, 10

**Statutes**

18 U.S.C. § 2511.......................................................................................... 6, 12

Cal. Penal Code § 631 ............................................................................... *passim*

Cal. Penal Code § 632 ............................................................................... *passim*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**Court Rules**

Federal Rule of Civil Procedure 12 ....................................................................7

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

## INTRODUCTION

This lawsuit is part of a broader wave of litigation attempting to mischaracterize ubiquitous website data analytics and marketing technologies as wiretapping and eavesdropping tools. Plaintiff Amargo Couture's claims are more flawed than most of these claims because she asks this Court to penalize OpenAI Global, LLC[1] ("OpenAI") for doing exactly what OpenAI told her it would do—and what she consented to. Plaintiff is an admitted user of ChatGPT, Facebook, and Google—three platforms whose terms of service and privacy policies expressly disclose the very data practices she now challenges. Plaintiff's consent to those practices is fatal to all her claims.

Independent of consent, each of Plaintiff's claims fail on the merits. Plaintiff's claim under the Electronic Communications Privacy Act ("ECPA") fails because she does not plausibly allege that any interception and reading of the contents of her alleged communications with OpenAI occurred *during transmission*, a threshold requirement the statute demands. The ECPA also requires only one party's consent to disclosure of a communication; in this case, OpenAI's consent is fatal to Plaintiff's ECPA claim.

Plaintiff's claims under California's Invasion of Privacy Act ("CIPA") fare no better. Her Section 631 claim under Clause Four (aiding and abetting) fails because Plaintiff cannot assert a predicate violation under Clause One (wiretapping) or Clause Two (eavesdropping). Clause One does not reach the electronic communications alleged here. And under Clause Two, Plaintiff alleges no facts establishing that the contents of her communications were intercepted and read "in transit," as the statute requires. Her Section 632 claim fails because Plaintiff does

[1] OpenAI Global, LLC was incorrectly named in this lawsuit as the entity that "operates ChatGPT," First Amended Compl. ¶ 2, and OpenAI reserves all rights to address this issue.

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

not (and cannot) allege that *OpenAI* eavesdropped on or recorded anything as the alleged eavesdropping was purportedly done by Meta and Google.

Finally, Plaintiff's common law invasion of privacy and intrusion upon seclusion claims fail for two reasons: OpenAI disclosed and put Plaintiff on notice of its data handling practices, and OpenAI's alleged conduct does not rise to the level of conduct that would be highly offensive to a reasonable person.

Instead of responding to OpenAI's initial motion to dismiss, Plaintiff filed a First Amended Complaint ("FAC") that is materially identical to her original Complaint in all respects aside from a handful of new allegations regarding the nature of information certain users allegedly share with ChatGPT. *See* FAC ¶¶ 73–77. As explained below, this addition does not cure the deficiencies in Plaintiff's confidentiality-dependent claims.

For all these reasons, and because Plaintiff has already had the opportunity to amend, the Court should dismiss Plaintiff's FAC in its entirety with prejudice and without leave to amend.

## BACKGROUND

### A. ChatGPT and Its Terms of Use

OpenAI operates ChatGPT.com, which hosts ChatGPT, a generative AI chatbot that "uses natural language processing (NLP) to hold lifelike conversations with users and generate content including articles, text summaries, advice and more." FAC ¶¶ 1–2, 19. Users enter queries—also known as prompts—into ChatGPT and receive written, conversational responses. *See id.* ¶ 20.

Users can create a ChatGPT account. But as a condition of creating an account, a user must agree to OpenAI's Terms and have read OpenAI's Privacy

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Policy. Both the Terms and Privacy Policy are hyperlinked and easily accessible:




OpenAI's Request for Judicial Notice ("RJN"), Ex. 1.[2]

ChatGPT users without accounts are provided notice of OpenAI's Terms and Privacy Policy before inputting prompts into the ChatGPT chat box, and they are informed that by using ChatGPT, they agree to the Terms and Privacy Policy. ChatGPT users also are expressly informed that their chats "may be reviewed and used to improve" ChatGPT's "AI models." A conspicuous disclosure appears underneath the chat box, with hyperlinks to the Terms and Privacy Policy:




RJN, Ex. 2.

---

[2] The webpages submitted in support of this Motion to Dismiss are subject to judicial notice. *See* RJN at 3–5.

OpenAI's Terms emphasize to users that the Terms form an agreement between the user and OpenAI, and they reiterate that by "using our Services, you agree to these Terms." RJN, Ex. 3 at 1.[3] They also notify users that OpenAI's Services "may include third party software, products, or services." *Id.* at 3.

OpenAI's Privacy Policy informs users that OpenAI discloses "Personal Data" to, among others, "vendors" and "service providers," including but not limited to providers of "web analytics services." RJN, Ex. 5 at 5. Personal Data is defined to include, among other items: Account Information; User Content, "*including your prompts* and other content you upload"; Communication Information; Contact Data; Log Data; Usage Data; Device Information; and Cookies and Similar Technologies. *Id*. at 2–3 (emphasis added).

The Privacy Policy also directs users to OpenAI's Cookie Notice and provides a hyperlink to the Cookie Notice. *Id*. at 3. The Cookie Notice provides additional details about OpenAI's use of cookies, including third-party cookies, and similar technologies, for "analytics" and "marketing performance" purposes. RJN, Ex. 7 at 6. The Cookie Notice specifically identifies pixels as one of the technologies OpenAI uses. *Id*. at 1.

**B. Facebook and Google and Their Terms of Use**

Facebook is a social media platform owned by Meta. FAC ¶ 21. Meta's Terms of Service, which govern access and use of Facebook, notify and explain to users that by using Facebook and other Meta products and services, they are agreeing to Meta's Terms:

> We don't charge you to use Facebook or the other products and services covered by these Terms, unless we state otherwise. Instead, businesses and organizations, and other persons pay us to show you ads for their products and services. By using our Products, you agree that we can show you ads that we think may be relevant to you and your interests.

---

[3] All policies referenced in this Motion to Dismiss are current effective policies. *See* RJN, Exs. 3, 5, 7, 9, 10, 12, 14, 16. The relevant language cited in this Motion has appeared in each policy since at least 2025. *See* RJN, Exs. 4, 6, 8, 11, 13, 15; Compl ¶ 7 (alleging that plaintiff used ChatGPT in 2025 and 2026).



JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

> We use your personal data to help determine which personalized ads to show you.

RJN, Ex. 9 at 1. Meta's Privacy Policy further explains and discloses to users that Meta collects and receives information from its partners, vendors, and other parties about users and their activities on other platforms through the Meta Pixel:

> We collect and receive information from partners, measurement vendors, marketing vendors and other third parties about a variety of your information and activities on and off our Products . . . like through . . . the Meta Pixel.

RJN, Ex. 10 at 7.

Google Analytics is "a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]." FAC ¶ 46. Google's Privacy Policy explains that "[w]ebsites and apps that integrate Google services like ads and analytics share information with us . . . regardless of which browser or browser mode you use." RJN, Ex. 14 at 30. Google's policy entitled, "How Google uses information from sites or apps that use our services," likewise informs Google users that when they visit websites that use Google Analytics, their web browser will automatically send certain information to Google. RJN, Ex. 16 at 1. Google in turn uses this information to deliver services to their partners and apps, including targeted advertising:

> Many websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google. For example, when you visit a website that uses advertising services like AdSense or Google Ads, including analytics tools like Google Analytics, or embeds video content from YouTube, your web browser automatically sends certain information to Google.
>
> Google uses the information shared by sites and apps to deliver our services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on our partners' sites and apps.

*Id.*; *see also* RJN, Ex. 14 at 6–7 (Google "use[s] the information we collect to tailor our services for you").

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**C. Plaintiff's Allegations**

Plaintiff alleges she is an active user of ChatGPT, visiting the ChatGPT website throughout 2025 and 2026 and entering queries on multiple topics. FAC ¶ 7. Plaintiff also alleges she has been a Facebook and a Google account holder and active user at all relevant times. *Id*. ¶¶ 8–9. She routinely accesses Facebook on her computer using the same browser she uses to access ChatGPT and routinely is logged into her Google account while using the same browser she uses to access ChatGPT. *Id.*

Plaintiff's Complaint centers on the allegation that OpenAI "aided and assisted [third parties Meta and Google] with intercepting Plaintiff's communications, including those that contained personally identifiable information ("PII"), and related confidential information . . . without Plaintiff's knowledge, consent, or express written authorization." *Id.* ¶ 10.

According to Plaintiff, OpenAI included the Meta Pixel on its website ChatGPT.com, and the Meta Pixel "is designed to collect information about website visitors that can be matched to an individual's Facebook profile for the purpose of sending targeted advertising to that user." *Id*. ¶¶ 28, 45. Plaintiff also alleges OpenAI discloses information to Google Analytics for marketing, advertising, and analytics purposes. *Id*. ¶ 60.

Notably, although Plaintiff claims she "entered queries related to sensitive information about her health, finances, and other private information" into ChatGPT, *id.* ¶ 7, the only disclosures she alleges are of "query topics"—e.g., automatically generated snippets of queries such as "Super Bowl 2005 Winner" — and Facebook IDs to Meta, and query topics, Google IDs, and email addresses to Google. *Id*. ¶¶ 9, 61–63, 66–69. Plaintiff does *not* allege that her full ChatGPT queries or chat logs are provided to Meta or Google.

Based on these allegations, Plaintiff asserts claims against OpenAI for violations of the ECPA, 18 U.S.C. § 2511, *et seq*., and CIPA, Cal. Penal Code

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

§§ 631 & 632, and for invasion of privacy under California's Constitution and intrusion upon seclusion. *Id.* ¶¶ 82–132. Plaintiff seeks to represent nationwide and California classes of "all [persons/California residents] who, during the class period, had their personally identifiable information and communications with ChatGPT disclosed to third party entities, as a result of using the Website." *Id.* ¶¶ 73–74.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a cause of action for failure to advance a cognizable legal claim or for failure to allege sufficient facts under a cognizable theory. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a plausible claim for relief, the Court must apply a "stringent standard of review." *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1211 (S.D. Cal. 2010). The Court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 680-81.

The Court may deny leave to amend a complaint where amendment is futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Here, no amendment can save Plaintiff's FAC. It should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CONSENT BARS ALL OF HER CLAIMS.

Each of Plaintiff's claims require a showing that she did not consent to the disclosure of her ChatGPT queries and personally identifiable information. *See, e.g.,* FAC ¶ 107 (Plaintiff's communications allegedly intercepted without her "knowledge or consent"); ¶ 118 (third parties allegedly received Plaintiff's and other

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

users' online communications "without their consent"); ¶ 127 (Plaintiff allegedly did not "consent" to her communications being overheard or recorded); ¶ 135 (Plaintiff allegedly "did not authorize" recording and transmission of private communications). Because Plaintiff consented to these disclosures, all her claims fail at the outset.

Courts regularly consider consent on a motion to dismiss "where lack of consent is an element of the claim." *Silver v. Stripe Inc.*, No. 20 Civ. 8196, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming motion to dismiss based on consent). Here, Plaintiff makes only conclusory assertions regarding lack of consent, which she did not bolster in her Amended Complaint. She alleges no facts that preclude application of OpenAI's, Facebook's, and Google's respective Terms and/or Privacy Policies, which expressly disclose the very data practices she now challenges. Plaintiff's consent to those terms and policies defeats all her claims. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025) (dismissing ECPA, CIPA, and privacy/seclusion claims where "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties"); *Washington v. Flixbus, Inc.*, No. 25 Civ. 212, 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) ("Consent is a bar to claims under CIPA.").

### A. Plaintiff Consented to OpenAI's Terms and Privacy Policy, Which Inform Users of Its Collection and Disclosure of Data.

All of Plaintiff's claims are barred because she consented to OpenAI's Terms of Use and Privacy Policy, which expressly inform users that information about their use of ChatGPT, including their prompts, may be disclosed to third parties.

ChatGPT account holders agree to OpenAI's Terms and acknowledge they have read the Privacy Policy as a condition of creating an account. RJN, Ex. 1. And ChatGPT users without accounts are notified of OpenAI's Terms and Privacy Policy before inputting prompts into the ChatGPT chat box and informed that by using

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

ChatGPT, a user agrees to OpenAI's Terms and Privacy Policy. RJN, Ex. 2. ChatGPT users also are informed that their chats may be reviewed and used to improve OpenAI's models. *Id*.

Plaintiff's FAC does not specify whether she was an account holder, but Plaintiff admits she entered prompts into the ChatGPT chat box on numerous occasions during 2025 and 2026. FAC ¶ 7. She thus agreed to OpenAI's Terms and was notified of and directed to its Privacy Policy and assented to its practices, either through account creation or repeated use of ChatGPT.

Plaintiff's claims center on OpenAI's alleged disclosure of query topics, Facebook and Google IDs, and email addresses to Meta and Google. *Id*. ¶¶ 61–72. But the Privacy Policy explicitly alerts users to this kind of disclosure. It informs users that OpenAI may disclose "Personal Data" to, among others, "vendors" and "service providers," including providers of "web analytics services." RJN, Ex. 5 at 5–6. Personal Data is defined to include, among other things, a user's account information; user content, "*including your prompts and other content you upload*"; log data; and cookies and similar technologies. *Id*. at 2–3 (emphasis added). The Privacy Policy also references OpenAI's Cookie Notice, which discloses OpenAI's use of cookies and similar technologies, such as pixels, for "analytics" and "marketing performance" purposes. *Id.* at 3; RJN, Ex. 7 at 6. The Privacy Policy thus explicitly notified Plaintiff that information about her use of ChatGPT, including her prompts, may be disclosed to third parties—the precise data practice about which she complains and disclaims knowledge of in her FAC.

*Washington v. Flixbus* is instructive. There, this Court held that plaintiff's CIPA and California constitutional invasion-of-privacy claims failed because he had consented to the data practices he challenged and dismissed the complaint. 2025 WL 1592961, at *4–6. Although defendant's website used the Meta Pixel to relay the plaintiff's travel and personal information to Facebook, the Court found that plaintiff had assented to that practice during checkout by confirming he had "read the Privacy

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Policy" and "agreed to" the Terms and Conditions. *Id*. at *4. The Privacy Policy and Terms both explicitly disclosed the use of cookies, tracking pixels, and data-sharing with third parties. *Id*. As this Court explained, a user's assent to data practices constitutes actual consent when the disclosures "explicitly notify" users of the practice at issue. *Id*. at *4 (quoting *Lakes*, 777 F. Supp. 3d at 1055). Because consent barred both claims and the defect could not be cured by amendment, this Court granted dismissal with prejudice. *Id*. at *6.

The same rationale applies here, as Plaintiff received conspicuous notification of OpenAI's Terms and Privacy Policy before using the ChatGPT chatbot. For account holders, users are clearly told that "[b]y clicking 'Finish creating account,' you agree to our Terms and have read our Privacy Policy." RJN, Ex. 1. That notice is directly above the banner titled "Finish creating account." *Id*. For non-account holders, the notice to users that "ChatGPT is AI. By using it, you agree to our Terms and Privacy Policy" appears underneath the chat box on a webpage otherwise free of clutter. RJN, Ex. 2. In both cases, the words "Terms" and "Privacy Policy" are underlined and hyperlinked so users may immediately access each policy.

Courts regularly find both types of notice to be adequately conspicuous such that continued use of the service constitutes consent. *See, e.g., Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) ("where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements"); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("The conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement."); *Silver*, 2021 WL 3191752, at *3 ("Courts have found that a binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink, and it is sufficient to require a user to

affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service.") (internal quotations and citations omitted).

By inputting prompts into the ChatGPT chat box and/or creating a ChatGPT account, Plaintiff was on notice of OpenAI's Terms and Privacy Policy and consented that information about her use of ChatGPT, including her query topics, would be disclosed to third parties. Plaintiff's consent precludes her claims.

**B. Plaintiff Agreed to Facebook's and Google's Terms, Which Expressly Disclose the Alleged Data Practices.**

Plaintiff's claims also fail because Facebook's and Google's Terms and Privacy Policies are clear that Facebook and Google users like Plaintiff expressly and contractually consent to the use of their personal information for targeted advertising.

Meta's Terms of Service, which govern access and use of Facebook, explicitly disclose that Meta uses "your personal data to help determine which personalized ads to show you." RJN, Ex. 9 at 1. And its Privacy Policy informs users that it collects and receives information about users' activities from third parties through the Meta Pixel. RJN, Ex. 12 at 1.

Similarly, Google discloses to users that Google Analytics receives information about its users from websites that use its services. Google, in turn, uses that information to "personalize content and ads you see on Google and on our partners' sites and apps." RJN, Ex. 16 at 1.

Plaintiff alleges she has been both a Facebook and a Google account holder and active user at all relevant times. FAC ¶¶ 8–9. Federal courts in California have consistently found that Facebook and Google account holders are bound by each company's respective Terms. *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (finding plaintiffs accepted and agreed to Facebook's Terms of Use by using Facebook); *In re Google RTB Consumer Priv.*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

*Litig*., 606 F. Supp. 3d 935, 940 (N.D. Cal. 2022) ("To create a Google account, an individual must agree to Google's Terms of Service."). Plaintiff thus cannot escape the fact that she assented to Meta's and Google's Terms, each of which alerted her that Facebook and Google collect and receive information about Plaintiff from other websites for advertising purposes.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ECPA.

Plaintiff's ECPA claim also fails for two additional independent reasons: (1) Plaintiff does not plausibly allege that her communications were intercepted during transmission; and (2) the ECPA only requires one-party consent.

### A. Plaintiff Makes No Plausible Allegations of Interception During Transmission.

The ECPA prohibits the "intentional[] intercept[ion]" of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). For an electronic communication to be "intercepted" within the meaning of the ECPA, the contents "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff's ECPA claim fails because Plaintiff does not plausibly allege the contents of her communications were intercepted during transmission. The FAC is devoid of the required "factual allegations regarding the method, or nature, of interception." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).[4] The Court is "not . . . required to accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[4] Because the "interception during transmission" element under ECPA has the same meaning as the "interception in transit" element under CIPA, case law interpreting either statute is informative. *See, e.g.*, *Adler v. Community.com, Inc.,* No. 21 Civ. 2416, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021; *Semien v. PubMatic Inc.*, No. 25 Civ. 3164, 2026 WL 216333, at *8 (N.D. Cal. Jan. 27, 2026).



JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

*Sisti v. Bosley Inc*. is instructive. No. 25 Civ. 10669, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026). There, plaintiff alleged that Meta and TikTok Pixels "contemporaneously" intercepted the contents of plaintiff's communications as they were transmitted to Defendants in violation of the "in transit" elements of CIPA and the Maryland Wiretap Act ("MWA"). *Id*. at *6. The court granted defendant's motion to dismiss, determining that plaintiff had "failed to provide any support for the illogical notion that [defendant] could have disclosed Plaintiff's information to third parties *while* that information was still in transit from Plaintiff to [defendant]." *Id*. The Court further found that plaintiff provided "even less support for the notion that Meta or Facebook could have intercepted 'and read' the contents of his communications while they were still in transit to [defendant]." *Id*. The Court consequently found that plaintiff failed to state a CIPA or MWA claim. *Id*.

Here, too, Plaintiff's conclusory allegations about the interception of her communications during transmission are insufficient. Plaintiff alleges that OpenAI "intercepted—in real time—Plaintiff's and Class Members' electronic communications via the tracking technology provided by Meta and Google on the Website." FAC ¶ 100. But Plaintiff provides no detail regarding how the technology at issue—the Meta Pixel and Google Analytics—allegedly intercept the content of Plaintiff's communications with OpenAI and how Meta and Google attempt to learn the contents of the communications while they are in transit. Instead, several of Plaintiff's allegations suggest that is *not* the case. For example, the FAC alleges the Meta Pixel operates by sending "a separate message to Meta's servers." FAC ¶ 27. The FAC similarly alleges that the Google Analytics code "duplicate[s]" a user's "communication with a website transmitting it to Google's servers." *Id.* ¶ 71. Further, according to Plaintiff, only after Meta and Google receive the duplicate communication do they purportedly "view[]" the information. *Id.* ¶¶ 65, 72.

Plaintiff's barebones and contradictory allegations concerning alleged "interception" are not enough to state a viable claim under the ECPA. Courts in this

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Circuit routinely dismiss ECPA claims based on similar conclusory allegations as insufficient to state a claim. *See, e.g.*, *Adler v. Community.com*, No. 21 Civ. 2416, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing a wiretap claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received"); *Ortiz v. Deckers Outdoor Corp.*, No. 25 Civ. 9631, 2026 WL 1243675, at *3 (N.D. Cal. May 6, 2026) (granting motion to dismiss where the complaint's allegations "d[id] not plausibly suggest users' communications were intercepted while in transit or while they were being sent or received"); *Rodriguez v. Google LLC*, No. 20 Civ. 4688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts [to] make it plausible Google is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, No. 19 Civ. 1297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (plaintiff's allegations were conclusory where plaintiff "fail[ed] to allege facts that support an inference that [defendant] 'captured or redirected' the contents of [plaintiff's] communications while in transit"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("conclusory" allegation of interception "during transmission" supported only by vague real-time collection allegations is insufficient to state a claim); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (plaintiff's allegations that defendant's code "allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications" was "just too conclusory to survive"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing plaintiffs complaint where they "d[id] not allege sufficient facts as to how and when the third party receives the communications"); *see also Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) (granting summary judgment for defendant, holding the Meta Pixel does not intercept information "in transit" because Meta did not read, attempt to read, or

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

attempt to learn the contents of the communications transmitted while they were in transit). Thus, Plaintiff fails to plausibly allege an interception during transmission, which dooms her ECPA claim.

**B. The ECPA Only Requires One-Party Consent.**

The ECPA is a one-party consent statute, i.e., it does not prohibit interception if at least one party—here, OpenAI—consents. *See, e.g.*, *Pyankovska v. Abid*, 65 F.4th 1067, 1074–75 (9th Cir. 2023) (no liability under ECPA "where a communication may lawfully be intercepted by a party to the communication or when at least one party to the communication has given prior consent"). According to Plaintiff, OpenAI chose to incorporate the Meta Pixel into its website and to use Google Analytics and consented to disclose information to Meta and Google. Thus, even if Plaintiff had not consented to the alleged disclosure of information, OpenAI's consent is sufficient to defeat an ECPA claim.

An exception to one-party consent exists, but it is not applicable here. One-party consent cannot be invoked as a defense to an ECPA claim if the "purpose for the interception—its intended use—was criminal or tortious." *Lakes*, 777 F. Supp. 3d at 1057. However, to invoke this exception, plaintiffs "must allege that either the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Id*. (internal quotation marks omitted). As the Ninth Circuit has explained, the "focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts . . . have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *In re Google Inc. Gmail Litig.*, No. 13 Civ. 2430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("the tort or crime exception cannot apply where the interceptor's purpose has plainly not been

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

to perpetuate torts on millions of Internet users, but to make money") (internal quotation marks omitted).

Here, Plaintiff alleges only that OpenAI intercepted her communications "for targeted advertising purposes, among other things." FAC ¶ 101. Because purported financial gain—not a tort—allegedly was OpenAI's primary motivation, the crime/tort exception cannot be invoked. OpenAI's consent to the alleged interception sinks Plaintiff's ECPA claim.

**III. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 631(a).**

Although CIPA Section 631(a) is globally entitled "Wiretapping," the California Supreme Court has explained it contains three operative clauses covering three separate acts: (1) "intentional wiretapping" through use of a "telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system" ("Clause One" or "Telephone Wiretapping"); (2) "willful attempts to learn the contents of a communication in transit" ("Clause Two" or "Eavesdropping"); and (3) "attempts to use or publicize information obtained in either manner" ("Clause Three" or "Use"). *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985); Cal. Penal Code § 631. Without a violation of Clause One or Clause Two, there can be no claim under Clause Three. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

In addition to the three operative clauses of Section 631(a), Section 631(a) also provides a fourth basis for liability: for aiding and abetting a violation of one of the other three clauses ("Clause Four" or "Aiding and Abetting"). Cal. Penal Code § 631(a). However, to prove aiding and abetting liability under Clause Four, Plaintiff must establish wrongdoing under one of the other three clauses. *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023).

Here, Plaintiff's CIPA Section 631(a) claim rests entirely on an aiding and abetting theory. *See* FAC ¶ 118 ("Defendant violated CIPA [Section 631] by aiding and permitting third parties to receive its users' online communications through the

Website without their consent"); *see also id.* ¶¶ 110–11. To assert a viable Clause Four – Aiding and Abetting claim, Plaintiff must allege that Meta and/or Google violated Clause One or Clause Two. But Plaintiff cannot establish a violation of Clause One – Telephone Wiretapping because that provision does not apply to internet communications. Plaintiff also cannot establish a violation of Clause Two – Eavesdropping because, for the reasons discussed above in the ECPA context, she fails to plausibly allege interception "in transit." Plaintiff's failure to assert a predicate violation of either Clause One or Two is fatal to her Section 631(a) claim.

**A. Clause One Does Not Apply to Internet Communications.**

Clause One applies only to "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a). A plain reading of this text reflects that "wire, line, cable, or instrument" each modify "telegraph or telephone," meaning Clause One contemplates only those two technologies. *See Chemehuevi Indian Tribe v. Newsom*, 919 F.3d 1148, 1151 (9th Cir. 2019) (in interpreting a statute, the plain language "is conclusive").

Based on the plain language of the statute, courts have consistently held that Clause One does not extend to the internet or any other technologies aside from telegraphs and telephones. *See, e.g.*, *Ramos v. The Gap, Inc.*, No. 23 Civ. 4715, 2024 WL 4351868, at *4 (N.D. Cal. Sept. 30, 2024) (the first clause of CIPA does not apply to internet communications); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) ("the first clause of Section 631(a) does not apply to communications over the internet"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 825-26 (the first clause "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument") (internal quotations omitted); *see also Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) ("If the California legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision or adding to CIPA's statutory scheme.") (Bybee, J., concurring in part).

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Because Plaintiff's allegations relate exclusively to internet communications and website activity, FAC ¶¶ 29–72, 115, she cannot assert a claim under Clause One.

Plaintiff's reliance on *Matera v. Google Inc.*, No. 15 Civ. 4062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016), *Bradley v. Google, Inc.*, No. 06-5289, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006), and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), for the proposition that Section 631(a) is not limited to phone lines is misplaced. *See* FAC ¶ 17. To the contrary, *Matera* confirms that Clause One is limited to phone lines, contrasting Clause One with Clause Two and noting that Clause Two is "not limited to communications passing over 'telegraph or telephone' wires, lines, or cables." *Matera*, 2016 WL 8200619, at *18. *Bradley* does not discuss Section 631(a) at all; rather, it merely recognizes that some provisions of CIPA apply to electronic communications. *Bradley*, 2006 WL 3798134, at *5–6 (CIPA Sections 630 through 637.2 "forbid unauthorized wiretapping, eavesdropping or recording electronic communications, intercepting wireless telephone and cordless telephone transmissions, manufacturing devices designed for electronic eavesdropping, and disclosing intercepted electronic communications."). And in *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit merely reversed the dismissal of a CIPA claim after concluding that defendant was "not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication." 956 F.3d at 608. It expressly "d[id] not opine whether the Plaintiffs adequately pleaded the other requisite elements of the statutes, as those issues [we]re not presented on appeal." *Id.* Plaintiff cannot assert that either Meta or Google violated CIPA Section 631(a) Clause One.

### B. Plaintiff Does Not Plausibly Allege Interception "In Transit."

To assert a violation of Section 631(a) Clause Two, "a plaintiff must allege facts demonstrating the statute's 'in transit requirement' has been met." *Heiting*, 728 F. Supp. 3d at 1124. Because the "in transit" analysis for a CIPA violation under Clause Two is the same as the "interception in transmission" analysis under ECPA,

Plaintiff cannot assert that Meta or Google's alleged interception violated Clause Two for the same reason her ECPA claim fails. *See supra* Section II.A; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

*****

Because Plaintiff fails to assert Meta or Google violated either Clause One or Clause Two, there can be no violation of Clause Three – Use. And Plaintiff's Clause Four – Aiding and Abetting claim fails given the absence of a predicate violation. As such, Plaintiff's CIPA Section 631(a) claim must be dismissed.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 632.

CIPA Section 632 prohibits "intentionally and without the consent of all parties to a confidential communication . . . us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632. Plaintiff fails to allege that OpenAI intended to eavesdrop upon or record *any* communications covered by the statute.

### A. Plaintiff Does Not Allege OpenAI Eavesdropped/Recorded or Intended to Assist Google or Meta in Doing So.

Nowhere in Plaintiff's FAC does she allege that OpenAI eavesdropped upon any communications—nor could she, as the alleged communications at issue took place between Plaintiff and OpenAI. As the court held in *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024), a "party cannot 'eavesdrop' on their own conversation under the first prong of section 632."

Plaintiff also does not allege that OpenAI recorded any communications without consent. Instead, Plaintiff's Section 632 claim is based on her allegation that "*Meta* and *Google* eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device." FAC ¶ 126 (emphasis added). Plaintiff thus has not alleged any facts to support a claim against *OpenAI* for purportedly violating Section 632. Plaintiff's claim fails on that basis alone.

To the extent Plaintiff's Section 632 claim is grounded on an (unpleaded) aiding and abetting theory, "Penal Code § 632 does not expressly provide for derivative liability," unlike the Fourth Clause of Section 631(a). *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024); *see also Stoba v. Saveology.com, LLC*, No. 13 Civ. 2925, 2014 WL 3573404, at *3 (S.D. Cal. July 18, 2014) (declining to impose criminal aiding and abetting standard for claims pursuing civil liability under Cal. Penal Code § 632).

To the extent the Court were to entertain a Section 632 claim for derivative liability, "courts have imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability" under Section 632. *Smith*, 754 F. Supp. 3d at 944. Under the common law standard for aiding and abetting, "liability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) (cleaned up). Critically, "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted" and requires "intentional participation *with knowledge of the object to be attained*." *Id.* at 1145–46.

Thus, to state a derivative claim under Section 632, Plaintiff must allege that OpenAI had knowledge of Google's and Meta's purported intent to use a recording device for an impermissible purpose. *See People v. Super. Ct. of L.A. Cnty*, 70 Cal. 2d 123, 134 (1969). Plaintiff has not done so. At most, Plaintiff alleges that "Meta and Google each utilized Plaintiff's and Class Members' sensitive personal information for its own purposes, including for targeted advertising" and that OpenAI "intended to help Meta and Google learn some meaning of the content of

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

users' queries to ChatGPT" for advertising purposes. FAC ¶¶ 116, 128. This allegation clearly is insufficient to plausibly allege OpenAI had knowledge of Meta's or Google's purported use of a recording device for an impermissible purpose. "[R]outine commercial behavior," such as targeted advertising, is entirely lawful. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). And this exact data sharing practice is openly disclosed to users in each company's terms and privacy policies that Plaintiff accepted. *Supra* Section I. *Cf. Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (allegation that defendant "had a policy or practice of recording telephone conversations" was too conclusory to plead intent).

Plaintiff's CIPA Section 632 claim must be dismissed.

### B. ChatGPT Query Topics Are Not Confidential Communications Under § 632(c).

Plaintiff's Section 632 claim fails for an additional reason. To state a claim under Section 632, the communication at issue must be "confidential" as defined by Section 632(c), meaning "a party has an objectively reasonable expectation that the conversation is not being overheard or recorded" by the party allegedly eavesdropping or recording the communication. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (citation omitted). Conversely, a communication cannot be "confidential" under Section 632 in "circumstance[s] in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c).

Here, Plaintiff cannot plausibly plead that the automatically generated query topics at issue (e.g., "Super Bowl 2005 Winner," *see* FAC ¶ 62) are "confidential" as that term of art is defined under Section 632(c) because OpenAI disclaims to users that "Chats may be reviewed and used to train our models." RJN, Ex. 2. And, as discussed above, OpenAI's Privacy Policy tells users that OpenAI discloses Personal Data, "including your prompts and other content you upload," to "vendors"



JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

and "service providers," among others. RJN, Ex. 5 at 1–2, 4–5. The Cookie Notice provides additional details about OpenAI's use of cookies, including pixels, for "analytics" and "marketing performance" purposes. RJN, Ex. 7 at 6. In these circumstances, Plaintiff would "reasonably expect that the communication may be overheard or recorded" in accordance with OpenAI's disclosures. As such, Plaintiff's communications cannot plausibly be "confidential" under Section 632.

Courts regularly find that similar disclosures nullify any expectation that information will not be shared with the third parties identified in the disclosures. *See, e.g.*, *United States v. Weber*, 599 F. Supp. 3d 1025, 1033–34 (D. Mont. 2022) (plaintiff lacked a reasonable expectation that video and image files found on his social media account would not be shared with law enforcement where defendant agreed to terms of service that informed him that company "was monitoring his content and may provide such content to law enforcement"); *United States v. Stratton*, 229 F. Supp. 3d 1230, 1242 (D. Kan. 2017) (plaintiff lacked a reasonable expectation that information in images stored on defendant's online gaming device and downloaded to online gaming network account would not be provided to law enforcement where network users were required to agree to provider's terms of service agreement in which provider reserved right to monitor online activity on network and "turn[ it] over to appropriate law enforcement authorities").

Although Plaintiff alleges she entered queries into ChatGPT related to "sensitive information about her health, finances, and other private information," that allegation does not change the result. FAC ¶ 7. Plaintiff voluntarily entered queries knowing not only that they would be reviewed and used to train AI models, but they would be disclosed to third parties: here, Meta and Google. As such, no "confidentiality" within the meaning of Section 632(c) attaches.

The FAC's new allegations regarding OpenAI's marketing statements about various ChatGPT use cases, including "express[ing] views or feelings," "consult[ing] the platform . . . for health information," or "budgeting," does not save

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Plaintiff's claim from dismissal. *See* FAC ¶¶ 73–76. OpenAI's Privacy Policy and Cookie Notice make no exception for health- or budgeting-related queries—they disclose, categorically, that "prompts and other content" may be shared with "vendors" and "service providers," including analytics providers, regardless of subject matter. RJN, Ex. 5 at 1–2, 4–5; RJN, Ex. 7 at 6. The generalized sensitivity Plaintiff seeks to ascribe to certain categories of ChatGPT queries does not materially alter her allegations or except her query topics from the disclosed data practices to which she consented. *See supra* Section I.

*Jones v. Skullcandy, Inc.*, 25-1759, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), which Plaintiff cites in the FAC, is inapposite. FAC ¶ 77. *Skullcandy* concerned an e-commerce retailer's alleged disclosure to Meta and Google of website users' browsing and purchase history data. 2026 WL 699819, at *15. There, the court found that the defendant failed to put website users on notice of the terms of use and privacy policy where the "link to the Terms [wa]s printed in a tiny font considerably smaller than the font used in the surrounding website elements which naturally directs the user's attention everywhere else." *Id.* at *16 (cleaned up). Here, in contrast, users receive conspicuous notification of OpenAI's Terms and Privacy Policy before using the ChatGPT chatbot, nullifying any alleged expectation of "confidentiality" under Section 632. *See supra* Section I.

## V. PLAINTIFF'S COMMON LAW CLAIMS FAIL.

To state claims for invasion of privacy under the California Constitution and intrusion upon seclusion under California common law, Plaintiff must show that (1) she had a reasonable expectation that her ChatGPT query topics would not be shared with Meta or Google, and (2) the alleged intrusion was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Plaintiff does not and cannot plausibly allege either element.

**A. Plaintiff Had No Reasonable Expectation That Her Query Topics Would Not Be Shared with Meta or Google.**

For the same reasons the automatically generated snippets of Plaintiff's ChatGPT prompts are not "confidential" within the meaning of Section 632(c), Plaintiff had no reasonable expectation that those query topics would not be shared with third parties like Meta and Google given the disclosures in OpenAI's Privacy Policy and related Cookie Notice. *See supra* Section IV.B; RJN, Ex. 5 at 1–2, 4–5; RJN, Ex. 7 at 6. She thus cannot plead a viable common law privacy/seclusion claim.

**B. OpenAI's Alleged "Intrusion" Was Not Highly Offensive to a Reasonable Person.**

Many courts have found that "the collection—and even disclosure to certain third parties—of personal information about the users of a technology may not constitute a sufficiently 'egregious breach of social norms' to make out a common law or constitutional privacy claim." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 830. For example, *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014), the court held there was no intrusion claim based on Google's collection and disclosure of users' data, including their browsing histories. Likewise in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), the court held that LinkedIn did not commit a "highly offensive" invasion of users' privacy by disclosing users' browsing histories to third parties. And in *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), the court found no invasion of privacy based on defendants' disclosure of each user's addresses, geolocation, the unique device identifier assigned to the user's device, gender, age, time zone, and information about app usage. These courts have characterized the collection and disclosure of such data as "routine commercial behavior." *Low*, 900 F. Supp. 2d at 1025 (internal citations omitted).

Here, Plaintiff acknowledges that OpenAI's purpose was commercial in nature. *See* FAC ¶ 101 (alleging that OpenAI intercepted her communications "for

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

targeted advertising purposes, among other things."). Plaintiff has not alleged any "egregious breach" of social norms. Her common law privacy/seclusion claim fails as a matter of law.

## VI. PLAINTIFF SHOULD NOT BE PERMITTED LEAVE TO AMEND.

Where, as here, amendment would be futile, the complaint should be dismissed without leave to amend. *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). For instance, leave to amend is considered futile when a plaintiff, like the Plaintiff here, has "consented to the conduct at issue." *Lakes*, 777 F. Supp. 3d at 1060 (N.D. Cal. 2025).

Plaintiff has already amended her Complaint in response to OpenAI's initial motion to dismiss, establishing that no amendment is capable of curing the numerous defects in her claims. These defects include but are not limited to: (i) Plaintiff's consent to OpenAI's Terms and Privacy Policy by using the ChatGPT platform; (ii) Plaintiff's consent to the use of the Meta Pixel by third parties like ChatGPT when she became a Facebook account holder; (iii) Plaintiff's consent to the use of tracking and targeted advertising technology by third parties like ChatGPT when she became an active Google account holder; (iv) the inapplicability of the First Clause of Section 631(a) – Telephone Wiretapping to communications over the internet; (v) ChatGPT query topics are not "confidential communications" within the meaning of CIPA Section 632(c); (vi) no reasonable expectation that query topics submitted to an AI platform operating under a disclosed data-sharing policy would not be shared; and (vii) data sharing for commercial purposes does not constitute highly offensive conduct.

The Court should grant OpenAI's motion to dismiss without leave to amend.

## CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court dismiss Plaintiff's FAC with prejudice.

Respectfully submitted,

Dated: August 19, 2026

JENNER & BLOCK LLP

By: _/s/ Laurie Edelstein_____________

Laurie Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
LEdelstein@jenner.com

Kate T. Spelman (CA Bar No. 269109)
Jenna L. Conwisar (CA Bar No. 341521)
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: (213) 239-5100
KSpelman@jenner.com
JConwisar@jenner.com

David Layden (IL Bar No. 6216417; *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
DLayden@jenner.com

*Counsel for Defendant OpenAI Global, LLC*