**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: mroberts@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AMARGO COUTURE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

OPENAI GLOBAL, LLC,

Defendant.

Case No. 3:26-cv-03000-DMS-GC

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Date: November 2, 2026
Time: 10:30 am
Courtroom: 12A
Judge: Hon. Dana M. Sabraw

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........ 1
ARGUMENT ........ 2
I. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW THAT PLAINTIFF CONSENTED TO THE WIRETAPPING ........ 2
A. Defendant Has Not Met Its Burden To Show That Plaintiff Was On Notice Of Or Assented To OpenAI's Terms And Privacy Policy ........ 2
1. The Chat Box Screen ........ 2
2. The Account Creation Screen ........ 4
B. Defendant's Privacy Policy Did Not Disclose the Conduct at Issue ........ 9
C. Defendant's Declaration Does Not Salvage Its Consent Argument ........ 12
II. PLAINTIFF PLAUSIBLY ALLEGES VIOLATIONS OF THE ECPA AND CIPA ........ 14
A. Plaintiff Alleges The Interception of "Content" ........ 14
B. Plaintiff Alleges her communications were intercepted "In Transit" ........ 15
C. The ECPA's "Crime-Tort" Exception Forecloses Defendant's Argument That It Consented To The Interception ........ 17
III. PLAINTIFF STATES A CLAIM UNDER CIPA § 632 ........ 18
A. Plaintiff Sufficiently Alleges That Defendant Violated § 632 Directly And Derivatively ........ 18
B. Plaintiff's Query Topics Are Confidential Communications Under CIPA § 632 ........ 20
IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY AND INTRUSION UPON SECLUSION ........ 22
V. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND ........ 24
CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) .......... 3

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) .......... 17

*Bradshaw & Lopez v. Lowe's Home Ctrs. LLC*,
2026 WL 2519422 (S.D. Cal. Aug. 26, 2026) .......... 22, 23

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 12, 18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 14

*Busby v. Invoca, Inc.*,
2025 WL 822664 (N.D. Cal. Mar. 14, 2025) .......... 20

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 22

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 13

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 12

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 13

*Casey v. U.S. Bank Nat. Assn.*,
127 Cal. App. 4th 1138 (2005) .......... 19

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 4, 6, 7

*Correia v. Lulu & Georgia, Inc.*,
2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .......... 21

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 16

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 16

*Dawson v. Univ. of Phoenix, Inc.*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026) .......... 17

*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) .......... 9

*Doe v. Call-On-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 1, 24

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .......... 17

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 25

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) .......... 23

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) .......... 20

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149 (C.D. Cal. 2026) .......... 24

*Gianne v. Accor Mgmt. US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026) .......... 19

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 15, 17

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 8

*Harris v. iHeartMedia, Inc.*,
2026 WL 194576 (N.D. Cal. Jan. 6, 2026) .......... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 16, 22, 23, 24

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 13

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 24

*In re Meta Android Priv. Litig.*,
833 F. Supp. 3d 1010 (N.D. Cal. 2026) .......... 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 1, 21, 23

*In re Otter.AI Priv. Litig.*,
2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) .......... 21

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 4

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... passim

*Judge v. Academia, Inc.*,
2026 WL 1256876 (N.D. Cal. May 7, 2026) .......... 8

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 15, 18

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 9

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 24

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 12

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 7

*Mata v. Zillow Grp.*,
2024 WL 5161955 (S.D. Cal. December 18, 2024)........................................15, 25

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)..........................................................................2, 3

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)....................................................................14

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024).....................................................................3

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)...............................................................14, 15

*Ramirez v. Trusper, Inc.*,
2026 WL 2351235 (N.D. Cal. Aug. 13, 2026)......................................................16

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)...........................................................................................11

*Rudy v. U.S. Dep't of Just.*,
2022 WL 1049337 (S.D. Cal. Apr. 7, 2022)..........................................................25

*Selby, v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025).........................................................15

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023)...............................................................3, 7

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026)....................................................................22

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018).................................................................................14

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024)......................................................1, 13, 16

*Smith v. LoanMe, Inc.*,
483 P.3d 869 (Cal. 2021)........................................................................................18

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025).....................................................15, 19

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 21

*St. Aubin v. Carbon Health Techs.*, Inc., 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 1, 16

*Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) .......... 18

*Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 18

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) .......... 24

*User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 12

*Vaccaro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 19

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 16

*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 19

*Washington v. Flixbus, Inc.*, 2025 WL 1592961 (S.D. Cal. June 5, 2025) .......... 9

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) .......... 3

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 10, 21

**STATUTES**

18 U.S.C. § 2511(1)(a) .......... 17

Cal. Penal Code § 31 .......... 19

Cal. Penal Code § 631(a) .......... 14, 16, 17, 18

Cal. Penal Code § 632 .......... 19, 20, 21

**RULES**

Fed. R. Civ. P. 8(d) .......... 18

**INTRODUCTION**

This case is in one sense very common and in another extremely unique. It is one of dozens of cases alleging violations of the ECPA and CIPA by a website operator using the Meta Pixel and Google Analytics. Courts routinely sustain similar allegations regarding these exact technologies. *St. Aubin v. Carbon Health Techs.*, Inc., 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022); *Doe v. Call-On-Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025).

The unique feature is that the Website at issue is ChatGPT, "an AI chatbot service designed to provide answers to almost any question a user asks, including queries regarding sensitive and personal topics like the user's finances, health, and legal issues." First Amended Complaint (ECF No. 17 (the "FAC") ¶ 2. Because of the wide variety of information attainable from ChatGPT and the conversational nature of the interface, users "increasingly rely on ChatGPT to gather information and advice to their most personal issues. As such, personal privacy on ChatGPT is an issue with broad implications for individuals' control of their privacy and personal information." *Id*. Indeed, "Defendant is encouraging users to express opinions to and seek advice from the Website that they would otherwise only trust to close confidants and licensed professionals who are subject to laws limiting the disclosure of this information, such as the Gramm-Leach-Bliley Act (GLBA) and Health Insurance Portability and Accountability Act (HIPPA). Users reasonably expect this information to remain confidential in the way it would remain confidential in daily life." *Id.* ¶ 76. The sensitivity of the information sought by users makes Defendant's disclosure of that information for use in profiling and advertising far more egregious.

Defendant's Motion to Dismiss (ECF No. 20) (the "Motion or "MTD") attempts to minimize its conduct and brings a series of arguments that have been rejected time

and again by courts in the Ninth Circuit. The Court should reject each of these arguments and deny Defendant's Motion.

## ARGUMENT

### I. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW THAT PLAINTIFF CONSENTED TO THE WIRETAPPING

#### A. Defendant Has Not Met Its Burden To Show That Plaintiff Was On Notice Of Or Assented To OpenAI's Terms And Privacy Policy

Defendant argues that Plaintiff "agreed to OpenAI's Terms and was notified of and directed to its Privacy Policy and assented to its practices." MTD at 9. But Defendant cannot show either notice of or assent to the Terms and Privacy Policy.

##### 1. <u>The Chat Box Screen</u>

Defendant has failed to show that Plaintiff was on notice of, and assented to, Defendant's Terms and Privacy Policy through use of the chat box screen without an account. That screen appears as follows:




OpenAI's Request for Judicial Notice ("RJN"), Ex. 2. The advisal on this screen is a prototypical browsewrap agreement, which "does not require the user to manifest assent to the terms and conditions expressly." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (cleaned up). Instead, "a party … gives his assent

simply by using the website." *Id.* (cleaned up). "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Defendant's chat box screen leaves no reason for the Court to depart from this traditional reluctance. The hyperlink is "buried at the bottom of the page … where users are unlikely to see it." *Nguyen*, 763 F.3d at 1177. Even if the hyperlink "is visible to a user without scrolling … the text … is smaller than the rest of the … typeface" found on the chat page. *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1359 (S.D. Cal. 2024); *see also Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *16 (S.D. Cal. Mar. 12, 2026) (no notice where "the notice is in small white font much smaller than the rest of the text on the Website"). And the hyperlink is not identifiable as such, as it is not in a different color and is only marked by an underline. *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) ("[T]he failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining is highly significant under *Berman*."). Moreover, it is well below the actual chat field, the place on the page a user's attention is naturally drawn to. *Berman*, 30 F.4th at 857 ("[T]he textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.").

The fact that Plaintiff "entered prompts into the ChatGPT chat box on numerous occasions" has no bearing on whether she had notice of and assented to OpenAI's Terms and Privacy Policy. MTD at 9. "Repeated use of a website … does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019)

(rejecting argument that "Wilson's repeated use of the app places him on constructive notice"). Nor does *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020) (MTD at 10), help Defendant; that courts are "more amenable" to browsewrap with explicit notice does not displace *Berman*'s later, published holding that the notice must be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. And Exhibit 2 is undated; Defendant offers nothing showing it is the screen Plaintiff saw "[t]hroughout 2025 and 2026." FAC ¶ 7.

**2. <u>The Account Creation Screen</u>**

Even for users who create accounts, Defendant has failed to show that users are on notice of and unambiguously assented to Defendant's Terms and Privacy Policy. First, while Defendant provides an undated capture of the signup screen, it provides no information as to when it was taken or whether this was the same screen Plaintiff encountered when she visited the Website "throughout 2025." FAC ¶ 7. This alone is dispositive on a motion to dismiss. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("The burden is on the party seeking [to enforce a contract] to show notice and assent.").

Further, even if the screen provided by Defendant was the same one showed to Plaintiff, Defendant does not meet its burden. The Ninth Circuit's decisions in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) and *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), are instructive and binding.

The webpages in *Berman* containing the hyperlinks at issue looked like this:




*Id*. at 859 (Appendix A).




*Id.* at 861 (Appendix B).

In *Berman*, similar to here, the defendants argued that "by clicking on the 'continue' buttons, [the Plaintiff] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 857. Specifically:

> The text disclosing the existence of the terms and conditions … ***is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements***, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.

*Id.* at 856-57 (cleaned up) (emphasis added); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists.").

Similarly, one screen of the sign-up process in *Chabolla* appeared as follows:




129 F.4th at 1174.

The Ninth Circuit held the hyperlink was "found below the 'Sign up with Facebook' option, on the periphery of where a user intending to use their email would be looking. A reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook." *Id.* at 1157. Thus, the Ninth

Circuit found the hyperlink was inconspicuous because it "seem[ed] to fade into the irrelevancy of other aspects of the page." *Id.*

Defendant's MTD displays only the zoomed-in version of the final screen. MTD at 2, 8. This is what the screen looks like in full:




RJN, Ex. 1.

This page suffers from the same flaws as the pages in *Berman* and *Chabolla*. First, the hyperlinks are too inconspicuous to put Plaintiff on notice. The hyperlinks are signified only by an underline, which is not enough. *See*, *e.g.*, *Serrano*, 666 F. Supp. 3d at 1096 ("[T]he failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining is highly significant under *Berman*."); *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) (finding hyperlink was inconspicuous where, although a different color, the hyperlink was "not highlighted, underlined, in all capital letters, or displayed inside of a conspicuous and clickable box").

Second, the advisal and hyperlinks are far less conspicuous than the portions of the page that a user's attention is naturally drawn to. *Berman*, 30 F.4th at 857 ("[T]he textual notice is further deemphasized by the overall design of the webpage,

in which other visual elements draw the user's attention away from the barely readable critical text.”). For example, the text is in light gray, blends into the white background, is in smaller font than the surrounding text, and is shown for the first time on a page with a much larger title of “Let’s confirm your age.” RJN, Ex. 1. The light, poorly contrasting font color with small text, the mere use of underlines for the hyperlinks, and the confusing page title all render the advisal too inconspicuous for a user to be on notice. *Berman*, 30 F.4th at 856-857.

Third and finally, notwithstanding that users are not on notice of the advisal, the advisal never even states that a user agrees to the Privacy Policy. The operative phrase preceding the Privacy Policy hyperlink merely states that “by clicking ‘Finish creating account’ *you* … *have read* our Privacy Policy.” RJN, Ex. 1 (emphasis added). “Even strongly implicit advisement isn't enough—a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms.” *Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025) (citing *Berman*, 30 F.4th at 857). Based on the plain language of Defendant’s advisal, no user who created an account manifested any type of consent to the Privacy Policy at all. To state the obvious, reading a contract and agreeing to be bound by it are two different things and, here, the difference is dispositive. Other courts have reached the exact same conclusion involving similar “See,” “Review,” or “View” prompts. See *Judge v. Academia, Inc.*, 2026 WL 1256876, at *4 (N.D. Cal. May 7, 2026), (“this pop-out did not ‘*explain* that certain actions will be understood by the offeror to signal assent to contractual terms,’ so Judge could not have unambiguously manifested assent… It did not include any clause explaining that a particular action would constitute agreement to the Terms of Use. Nor did it direct Judge to agree to those terms. Rather, it directed him to ‘[s]ee’ Academia's ‘terms of service.’” (citing *Godun* 135 F.4th at 711-13); *Harris v. iHeartMedia, Inc.*, 2026 WL 194576, at *4 (N.D. Cal. Jan. 6, 2026) (“Both notices simply instructed the user to ‘review’ the terms of service. They did not indicate that the user was assenting to the terms of

service by continuing.") *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869, at *1 (C.D. Cal. Dec. 3, 2025) (same).

This defect is dispositive even if account holders assented to the Terms. Every disclosure Defendant relies on, "Personal Data," "vendors" and "service providers," and the Cookie Notice, is in the Privacy Policy and Cookie Notice, not the Terms. MTD at 9. The only Terms provision Defendant cites says the Services "may include third party software," MTD at 4, which says nothing about sending users' conversations to Meta or Google.

In arguing that Plaintiff was on notice of and assented to its Terms and Privacy Policy, Defendant points to this Court's decision in *Washington v. Flixbus, Inc.*, 2025 WL 1592961 (S.D. Cal. June 5, 2025). MTD at 9-10. However, that decision cuts the other way. Defendant omits that this Court found the *Flixbus* plaintiff to be on notice because there was a "checkbox … next to a 'Pay now' button, along with the text: 'I declare to have read the Privacy Policy and I agree to the [Terms and Conditions].'" *Washington*, 2025 WL 1592961 at *5. The plaintiff did "not deny that he checked the box." *Id.* In stark contrast, ChatGPT's website never "required users to take affirmative action to demonstrate their assent" to OpenAI's Terms and Privacy Policy. *Id.* *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025), is likewise inapposite: by Defendant's own description, it held that users consented to "the use of cookies including by third parties." MTD at 8. Plaintiff challenges not cookies, but the disclosure of her conversations' subject matter, tied to her identity, for Meta's and Google's own advertising (FAC ¶¶ 61–72, 128), a practice Defendant's policy disclaimed, as shown below.

### B. Defendant's Privacy Policy Did Not Disclose the Conduct at Issue

Even if Plaintiff had been on notice of the Terms and Privacy Policy, neither document discloses the conduct at issue and, in fact, represent the opposite to users.

The Privacy Policy defines the contents of users' conversations with ChatGPT

as "User Content" and part of a user's "Personal Data." RJN, Ex. 6 at 3.[1] The Privacy Policy specifically enumerates Defendant's uses of user content:

> "To provide, analyze, and maintain our Services, for example to respond to your questions for ChatGPT; To improve and develop our Services and conduct research, for example to develop new product features; To communicate with you, including to send you information about our Services and events, for example about changes or improvements to the Services; To prevent fraud, illegal activity, or misuses of our Services, and to protect the security of our systems and Services; To comply with legal obligations and to protect the rights, privacy, safety, or property of our users, OpenAI, or third parties." *Id.*

None of these enumerated uses have anything to do with sharing users' query topics with other technology companies for targeted advertising. FAC ¶¶ 27, 30, 47, 55, 61-67, 69-72.

Even the provisions Defendant points to as supposed disclosures of the wiretapping are off base; none of the following expressly discloses the conduct at issue: chats "may be reviewed and used to improve" ChatGPT's "'AI models'" (MTD at 9); services "may include third party software, products, or services" (MTD at 3:22); cookies may be used for "analytics" and "marketing performance" purposes (MTD at 4); and OpenAI "discloses 'Personal Data' to … 'vendors' and 'service providers'" (MTD at 4). *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) ("Personal information is not synonymous with a word-for-word transcript of all communications both as a matter of common sense and as defined by the policy.") (cleaned up). Whatever the Terms and Privacy Policy do disclose, it is certainly not the simultaneous interception of a user's content by third parties. This distinction is critical; as the California Supreme Court has long held, "[w]hile one

---

[1] Defendant relies on a version of its privacy policy published after this action was filed. *Compare* ECF No. 1 (Complaint filed May 13, 2026) *with* RJN Ex. 5 (Privacy Policy purportedly published May 18, 2026). This policy, even if there was notice and assent, cannot apply to the conduct alleged by Plaintiff throughout 2025 and in 2026 before the action was filed.

who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985).

Indeed, the vendor provision confirms the absence of consent. It limits vendors to processing data "[p]ursuant to our instructions … only in the course of performing their duties to us." RJN, Ex. 6 at 6; *accord* RJN, Ex. 5 at 6. Plaintiff alleges the opposite: Meta and Google use her information "for [their] own purposes, including for targeted advertising." FAC ¶¶ 65, 72, 128. The banner is no better; it says chats "may be reviewed and used to improve our AI models" (not, as Defendant misquotes it, "train our models," MTD at 21), RJN, Ex. 2, which concerns Defendant's own use, not disclosure to third parties. And the Cookie Notice describes "Marketing Performance" cookies as measuring "the performance of marketing campaigns to enhance the Services' visibility" (RJN, Ex. 7 at 13), Defendant's own campaigns, and disclaims addressing "how we process your personal information outside of our usage of cookies." *Id.* at 2.

Far from disclosing the wiretapping, the Privacy Policy expressly communicates that OpenAI "do[es]n't 'sell' Personal Data or 'share' Personal Data for cross-contextual behavioral advertising, and [] do[es] not process Personal Data for 'targeted advertising' purposes." RJN, Ex. 6 at 13. Only in May 2026 (after the filing of this lawsuit) did Defendant add "Marketing Partners" and disclose that it "may share limited data" for "targeted advertising" and only to promote its own products. RJN, Ex. 5 at 6, 14. That belies Defendant's claim that its relevant language has appeared "since at least 2025," and forecloses consent before that date. MTD at 4 n.3, Further, the Privacy Policy states that OpenAI "aggregate[s] or de-identif[ies] Personal Data so that it no longer identifies you and use[s] this information for the purposes described above, such as to analyze the way [its]

Services are being used, to improve and add features to them, and to conduct research." RJN, Ex. 5 at 6; *see also* RJN, Ex. 6 at 5-6 (similar language). This, of course, leaves users with the impression that they cannot be identified and that their personal information will not be used for targeted advertising. However, Plaintiff alleges the precise opposite: that the query topics of her conversations were disclosed alongside personally identifiable information, including her email address and cookies linked to her Google and Facebook profiles. FAC ¶¶ 61-72. If a "user could have plausibly understood the disclosures as not disclosing that the defendant would engage in particular conduct, then the disclosures are insufficient to establish consent." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (cleaned up); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) ("[t]he disclosures must have only one plausible interpretation for a finding of consent"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) ("if the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage."); *In re Meta Android Priv. Litig.*, 833 F. Supp. 3d 1010, 1025 (N.D. Cal. 2026) ("seemingly broad text in a disclosure might not provide effective consent if it would be objectively reasonable for a person to interpret the text more narrowly.").

### C. Defendant's Declaration Does Not Salvage Its Consent Argument

"On a motion to dismiss, the burden of proof to show consent rests with defendant[]." *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025). Defendant argues that Plaintiff "assented to Meta's and Google's Terms, each of which alerted her that Facebook and Google collect and receive information about Plaintiff from other websites for advertising purposes." MTD at 12. That is wrong.

*First*, Defendant has provided <u>no</u> evidence as to whether or when Plaintiff

agreed to any purported policies published by Meta or Google and, thus, has provided no evidence of mutual assent to any of its purported policies. The case law is clear that the mere existence of a privacy policy does not establish consent to said policy. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024).[2]

*Second*, even if Defendant could show that Plaintiffs consented to Meta's or Google's policies, none "explicitly notify[]" Plaintiff of the conduct at issue. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("[F]or consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its [policies], to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014).

Despite attaching numerous Meta and Google policies, none of which Defendant can show Plaintiff actually assented to, the Motion relies on three policies specifically: Meta's January 2025 Terms of Service (RJN Ex. 9); Meta's July 23, 2026 Privacy Policy (*id.* Ex. 12), and a Google webpage regarding offsite tracking (*id.* ex. 16). MTD at 11. Neither Ex. 12 nor its June 2025 predecessor (Ex. 13) discloses that a website will send Meta the subject of a user's AI conversations; they mention only "[w]ebsites you visit and cookie data," and direct users to the website's own privacy policy, which here disclaimed the sharing at issue. RJN, Ex. 13 at 2.

The Meta Terms of Service cited by Defendant speak only generally of using "information about your activity and interests" for ads, and promise Meta "do[es]n't share information that directly identifies you." RJN, Ex. 9 at 5–6.

---

[2] As discussed in Plaintiff's Opposition to Defendant's Request for Judicial Notice, the Court may do no more than acknowledge the existence of the policies and should end its examination here.

The Google page contains only general statements that some information may be collected, but says nothing about any type of sensitive information, like health or financial information, and does not indicate in any way that conversations with an AI chatbot, which are thought to be more private because of their conversational nature, would be disclosed. *Id*. Ex 16. This is insufficient to disclose the conduct at issue. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118 (W.D. Pa. 2019) ("Even if a privacy statement discloses some kinds of tracking, a defendant can still be liable for other kinds of tracking that the privacy statement does not disclose."). Indeed, Google's page contemplates that the website will "ask for your consent before allowing Google to process your information." RJN, Ex. 16 at 2. And Defendant's cases binding users to Facebook's or Google's terms, MTD at 8, 11–12 (citing *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018), and others), were suits against Facebook or Google themselves. Defendant cites no authority allowing a website to borrow a third party's contract to supply consent to its own disclosures, let alone the consent "of all parties" CIPA requires. Cal. Penal Code § 631(a).

## II. PLAINTIFF PLAUSIBLY ALLEGES VIOLATIONS OF THE ECPA AND CIPA

### A. Plaintiff Alleges The Interception of "Content"

Defendant contends that the FAC "does not plausibly allege the contents of her communications were intercepted during transmission." MTD at 12. This is wrong.

"Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA.").

Here, Plaintiff alleges that, Defendant collects the user's query topics generated from prompts to Chat GPT, which disclose "personal interests, queries, and habits." *Id.*; *see* FAC ¶ 7 ("queries related to sensitive information about her health, finances, and other private information"). The FAC specifically alleges that Defendant aids the Third Parties in intercepting the content of users' queries which include information "regarding sensitive and personal topics like the user's finances, health, and legal issues." FAC ¶ 7; *see* FAC ¶¶ 61-63, 66-70. As such, Plaintiff plausibly alleges that Defendant aids the Third Parties in intercepting the "contents" of users' communications. *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (finding "contents" were intercepted where "Plaintiffs have alleged that, among other things, Sovrn collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed"); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (same); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 867 (N.D. Cal. 2026) ("URLs which disclose search terms that reveal website users' personal interests, queries, and habits are contents of communications under CIPA and ECPA.") (cleaned up); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (interception of contents where information collected included "search queries or specific pages Plaintiffs viewed").

**B. Plaintiff Alleges her communications were intercepted "In Transit"**

Further, Defendant contends that Plaintiff fails to allege interception "during transmission." MTD at 12–14, 18–19. Not so.

"While a plaintiff must do more than merely restate the pleading requirement of real time interception, the standard is not overly burdensome. For instance, allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp.*, 2024 WL 5161955, at *6 (S.D. Cal. December

18, 2024) (cleaned up). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). The FAC contains exactly those allegations.

Plaintiff describes how the Pixels load onto the browser and then capture and transmit the user's communications as the user enters the information into the Website. FAC ¶¶ 27, 30, 47, 61-67, 69-72. That is sufficient. *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (real-time reading alleged where plaintiff "pointed to statements from Akamai regarding real-time insights and data from every use event collected as it happens") (cleaned up)*; Jones*, *2026* WL 699819, at *17 (same); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024). Numerous courts evaluating similar allegations involving the same third-party trackers have agreed. *See, e.g.*, *St. Aubin v. Carbon Health Techs.*, Inc., 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (finding "in-transit" interception alleged under CIPA § 631(a) as to Meta Pixel); *Ramirez v. Trusper, Inc.*, 2026 WL 2351235, at *6 (N.D. Cal. Aug. 13, 2026) (same as to Meta Pixel); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (CIPA § 631(a) claim sustained in case involving Google Analytics).

Defendant's claim that the FAC is "contradictory" (MTD at 13) rests on selective quotation. The "separate message" is sent "contemporaneously" and is "concurrent with the communications with the host website," FAC ¶ 27; the Pixel "sends a simultaneous transmission to Meta containing both the topic information and" the user's FID, *id.* ¶ 63; and Google's code "contemporaneously duplicate[s] the communication," *id.* ¶ 71. Duplication is the mechanism of interception, not its absence. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("unauthorized duplication and forwarding of unknowing users' information" does "not exempt from liability as a matter of law under the Wiretap

Act or CIPA"). *Sisti* addressed whether the website operator could disclose information while it was still in transit to the operator, MTD at 13; Plaintiff alleges that Meta's and Google's own code captured it. And *Doe v. Eating Recovery Center* was decided on summary judgment after the court there sustained the pleadings. See *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024).

Defendant's Clause One argument (MTD at 17) is beside the point: Plaintiff's § 631(a) claim rests on Meta's and Google's violations of the second and third clauses, which Defendant aided. FAC ¶¶ 112-118, 128.

### C. The ECPA's "Crime-Tort" Exception Forecloses Defendant's Argument That It Consented To The Interception

Defendant's argument that it can avoid ECPA liability because it consented to the interceptions fails. MTD at 15.

First, The ECPA imposes liability for "procur[ing] any other person to intercept" communications (*i.e.*, it imposes derivative liability). 18 U.S.C. § 2511(1)(a); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020) ("Given that procurement can still give rise to a violation under § 2511(1)(a), and given that an entity may be civilly liable under § 2520(a) for that violation, defendant in this case may be held civilly liable if it violated the underlying criminal statute by way of procurement."); *Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at *14 (N.D. Ill. Jan. 13, 2026) ("[T]he victim of the wiretap may sue any person or entity who engaged in the violation, including procuring interception.").

Further, Defendant's consent is not sufficient to defeat the ECPA interception claim because the crime-tort exception applies to Defendant's conduct. Courts have held "the disclosure and use of Plaintiff['s] information for advertising can plausibly constitute an independent invasion of privacy beyond the act of intercepting the information alone, satisfying the crime-tort exception." *Gilligan v. Experian Data*

*Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (Koh, J.) (crime-tort exception satisfied where plaintiffs alleged conduct "violated state law, including … intrusion upon seclusion, and invasion of privacy"); *Krzyzek*, 817 F. Supp. 3d at 869 ("Where, as here, plaintiffs adequately alleged invasion of privacy, the Court is not convinced that ECPA's crime-tort exception does not apply."). Such is the case here. Plaintiff alleges Defendant enabled the Third Parties to intercept Plaintiff's communications with ChatGPT to compile profiles for use in targeted advertising and marketing based on the content of those communications. *See*, *e.g.*, FAC ¶¶ 27, 30, 47, 55, 61-67, 69-72. Defendant's "financial gain" argument (MTD at 16) misreads *Sussman*, which asks whether the "intended use" was tortious. *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Here it was: associating intercepted conversations with users' profiles to target them with ads is an invasion of privacy independent of the interception. FAC ¶¶ 63-65, 69-72, 104-105. A profit motive does not sanitize a tortious use.

## III. PLAINTIFF STATES A CLAIM UNDER CIPA § 632

### A. Plaintiff Sufficiently Alleges That Defendant Violated § 632 Directly And Derivatively

First, Defendant argues that "Plaintiff . . . has not alleged any facts to support a claim against *OpenAI* for purportedly violating Section 632." MTD at 19 (emphasis in original). Not so. It has "long been established that section 632 prohibits parties as well as nonparties from recording a confidential communication." *Smith v. LoanMe, Inc.*, 483 P.3d 869, 878 (Cal. 2021) (cleaned up); *see also Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 n.4 (N.D. Cal. 2024) ("The third party doctrine applies to 'eavesdropping,' but not 'recording.'"). As an initial matter, Plaintiff alleges in the alternative that Defendant used the Third Parties' trackers to record users' communications with ChatGPT. See FAC ¶¶ 28, 63, 99-100, 120, 133-135; *see also* Cal. Penal Code § 632(a); Fed. R. Civ. P. 8(d)(2)-(3).

Even putting that aside, Plaintiff may pursue her CIPA § 632 claim derivatively. While Defendant is correct that § 632 does not expressly provide for derivative liability, numerous courts in this Circuit have applied the general principal-liability provision of California Penal Code § 31 to CIPA claims, and Defendant concedes courts "have imputed the civil liability standard for aiding and abetting" to § 632. MTD at 20. These courts have reasoned that "[n]othing in the language of CIPA explicitly limits the application of section 31." *Rack Room Shoes*, 2025 WL 1085169, at *5 (cleaned up); *see also Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963-64 (S.D. Cal. 2011) ("[T]here is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632."); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026) ("Courts have imputed the civil liability standard for aiding and abetting to derivative liability under section 632. . . . This Court will do the same here.") (cleaned up).

Thus, Plaintiff may pursue a CIPA § 632 claim against Defendant as a principal so long as she alleges Defendant "g[a]ve substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Rack Room Shoes*, 2025 WL 1085169, at *5 (cleaned up). "An aider and abettor is one who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense." *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (cleaned up). Plaintiff has so alleged here: Defendant "knowingly and affirmatively embedded [the Third Parties'] code into its website" knowing the Third Parties' "data collection had the purpose of tracking individually identifiable user habits." *Rack Room Shoes*, 2025 WL 1085169, at *5; *see also*, *e.g.*, FAC ¶¶ 24-29, 33-34, 45, 47-60, 68, 116. That is "actual knowledge of the specific primary wrong," *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005): Defendant chose to install these tools, whose documented function is capturing visitors' activity for ad targeting. *Id.* ¶¶ 28-33, 45-60. Defendant did this because it

"intended to help Meta and Google learn some meaning of the content of users' queries," FAC ¶ 116. The wrong is nonconsensual recording, not "routine" advertising.

### B. Plaintiff's Query Topics Are Confidential Communications Under CIPA § 632

Defendant also argues that "Plaintiff's communications cannot plausibly be 'confidential' under Section 632[.]" MTD at 21-22. Not so. Cal. Penal Code § 632(c) states that "confidential communication means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." "In interpreting CIPA, the California Supreme Court has held that a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) (cleaned up). Plaintiff alleges as much. Specifically, Plaintiff alleges that when she conveyed sensitive information to Defendant, she "had a reasonable expectation that [her] communications, identities, health information, and other data would remain confidential, and that Defendant would not install wiretaps on the Website." FAC ¶ 134; *see also* FAC ¶¶ 3, 76-77, 107, 123; *Busby v. Invoca, Inc.*, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) ("that expectation does not encompass [a Third Party]"); *Ewing*, 2015 WL 12564225, at *4 ("Although Plaintiff does not state in detail the nature of the conversations, such specificity regarding the alleged confidential communication is not necessary."). Defendant's disclosures do not change this. The banner and vendor provision describe use by Defendant, a party, and its agents—not recording by Meta and Google, strangers to the communication. *See Busby*, 2025 WL 822664, at *1. *Weber* and *Stratton* are Fourth Amendment cases involving terms expressly reserving disclosure to law enforcement. MTD at 22.

Furthermore, courts in this Circuit have routinely found that communications about health and financial matters are uniquely "confidential" within the meaning of

CIPA § 632. *See*, *e.g.*, *Yockey*, 688 F. Supp. 3d at 973–74 (sustaining CIPA § 632 claim based on interception of information from chat portal on Kaiser Permanente's website); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *In re Otter.AI Priv. Litig.*, --- F. Supp. 3d ---, 2026 WL 2351237, at *10 (N.D. Cal. Aug. 13, 2026); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

Here, Plaintiff alleges she chatted with ChatGPT about "her health, finances, and other private information[,]" yet those communications were intercepted by the Third Parties—as enabled by Defendant—without Plaintiff's consent. FAC ¶¶ 7, 10. And this is exactly what Defendant's platform is meant for: OpenAI markets ChatGPT as a platform for seeking advice about issues that users would otherwise only trust to close confidants and licensed professionals. *See* FAC ¶¶ 73-77. Surely, it goes beyond the expectation of a reasonable user that the topics of their personal and sensitive conversations with an AI would be leaked without their consent to two of the world's largest technology companies.[3] Nor can Defendant recast the data as "automatically generated snippets." MTD at 6. The FAC alleges the query itself "becomes the header value" transmitted with identifying information. FAC ¶¶ 62-63.

Defendant's attempt to distinguish *Jones* falls flat for multiple reasons. MTD at 23. The *Jones* court found that the plaintiff "sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties[.]" *Jones*, 2026 WL 699819, at *18. This determination was based on the plaintiff's allegations that the defendant allowed third parties to collect information such as detailed browsing history, product preferences, personally identifiable

[3] Additionally, given the "fact-intensive" nature of the inquiry, courts in this Circuit have found that whether a communication is "confidential" under CIPA § 632 "is often too difficult to resolve at the pleadings stage." *Correia v. Lulu & Georgia, Inc.*, 2026 WL 2343093, at *6 (S.D. Cal. Aug. 12, 2026) (collecting cases).

information, behavioral data showing consumer interests, and demographic\psychographic profiles to enable targeted marketing. *Id.* And the data at issue here—data related to numerous intimate life decisions and activities—is far more sensitive than the data disclosed in *Jones*, making Plaintiff's reasonable expectation of privacy even stronger. Defendant's font-size distinction (MTD at 23) fails because its own notices share those defects. *See supra* Section I.1.

## IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY AND INTRUSION UPON SECLUSION

Courts considering invasion of privacy and intrusion upon seclusion claims "ask whether: (1) there exist a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Id.* Defendant argues that Plaintiff "does not and cannot plausibly allege" the elements in this inquiry. MTD at 23. That is wrong.

<u>First</u>, Defendant argues that Plaintiff has not adequately pled a reasonable expectation of privacy over her query topics. MTD at 24. This is misguided. "Whether one has a reasonable expectation of privacy is a mixed question of law and fact, informed by whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Bradshaw & Lopez v. Lowe's Home Ctrs. LLC*, 2026 WL 2519422, at *3 (S.D. Cal. Aug. 26, 2026) (Sabraw, J.) (cleaned up). "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 915 (N.D. Cal. 2026). Further, courts will consider the nature of the collection and the sensitivity of the collected information. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020).

Here, Plaintiff plainly alleges that she had a reasonable expectation of privacy over her communications with ChatGPT due to: (1) the sensitive nature of the communications, and (2) the immense amount of data collected. *See* FAC ¶¶ 73-77. This is more than enough to state a claim. *Byars v. Goodyear Tire & Rubber Co.*, 654

F. Supp. 3d 1020, 1028 (C.D. Cal. 2023) ("Because [Plaintiff] contends that users of [Defendant's] website 'share highly sensitive personal data' via [Defendant's] chat feature, [Plaintiff] has sufficiently alleged that website users had a reasonable expectation of privacy[.]").[4]

Second, Defendant contends that its practices do "not rise to the level of conduct that would be highly offensive to a reasonable person" because "OpenAI's purpose was commercial in nature." *See* MTD at 2, 24-25. This is also misguided.

As an initial matter, what a reasonable user expects and what behavior is "routine" are questions of fact inappropriate for the pleadings stage. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."). Accordingly, the Court should wait for a full record to resolve the issue.

In any event, the information disclosed here constitutes intimate and sensitive data because users use ChatGPT for a wide variety of intimate discussions. Indeed, Plaintiff alleges she used ChatGPT to discuss issues related to her health and finances, disclosing information she would not have otherwise if she knew it would be disseminated by Google and Meta for economic advantage. *See* FAC ¶ 7; *see also Bradshaw & Lopez*, 2026 WL 2519422, at *3 ("[C]ourts have found, as a matter of law, that certain data-sharing practices constitute highly offensive conduct because of the data's sensitive nature [.]"). That Defendant acted for a commercial purpose does not make the disclosure of Plaintiff's sensitive information less offensive, as numerous courts have found in cases with similar facts. *See, e.g.*, *Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, at *6 (C.D. Cal. Oct. 1, 2025); *In re Meta Pixel Healthcare*

[4] As discussed in above, Defendant's argument that Plaintiff did not have a reasonable expectation of privacy over her sensitive communications to ChatGPT "given the disclosures in OpenAI's Privacy Policy and related Cookie Notice" (MTD at 24) fails.

*Litig.*, 647 F. Supp. 3d at 801; *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1169 (C.D. Cal. 2026); *Doe v. Call-On-Doc, Inc.*, 2025 WL 1677632, at *17 (S.D. Cal. June 13, 2025).

Defendant's authority is unpersuasive as it concerns routine commercial behavior that is not legally protected or cases that contain insufficient information as to what was allegedly disclosed. *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Although Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information, precisely, these third parties have obtained"). In contrast, Plaintiff alleges that Defendant surreptitiously shared sensitive and confidential information with Google and Meta while Plaintiff was having personal conversations with Defendant's chatbot. *See* FAC ¶ 7; *see also* FAC ¶¶ 132, 134. These sensitive and confidential communications are also tied to a user's personally identifiable information, such as their Facebook ID, hashed email address, or Google profile ID. *See* FAC ¶¶ 8–9 (alleging that Plaintiff routinely used the same browser to access ChatGPT and her Google\Facebook accounts); 61–72 (detailing how Defendant discloses personally identifiable information and sensitive information to Third Parties).

## V. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND

Defendant argues that leave to amend should be denied as futile. MTD at 25. The Ninth Circuit has emphasized that "[u]nder [the] futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by *any* amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up) (emphasis added). Here, it is far from certain that Plaintiff's claims are futile. Indeed, numerous courts have sustained CIPA, ECPA, and constitutional privacy claims in cases involving the Third

Parties here. *See, e.g.*, *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025); *Jones*, 2026 WL 699819, at *1; *Mata*, 2024 WL 5161955, at *1 (S.D. Cal. Dec. 18, 2024); *Heerde*, F. Supp. 3d at 857.

Nor does Plaintiff's prior amendment establish futility. Plaintiff filed her FAC before any ruling on the sufficiency of her allegations, so she has never had the benefit of a judicial determination identifying any deficiencies in her pleadings that Defendant now asserts. Courts in this Circuit routinely grant leave to amend in these circumstances. *See Rudy v. U.S. Dep't of Just.*, 2022 WL 1049337, at *4 (S.D. Cal. Apr. 7, 2022) (granting leave to amend "[a]lthough Plaintiff has amended her complaint once before . . . given the Ninth Circuit's guidance that 'requests for leave should be granted with extreme liberality'").

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety. However, should the Court find to the contrary, Plaintiff can provide additional allegations regarding Defendant's AI platform, Defendant's intent and knowledge with respect to the Third Parties' practices, and Plaintiff's expectations of privacy regarding her communications.

Dated: October 19, 2026

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: 914-874-0710
Facsimile: 914-206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: mroberts@bursor.com
Email: jwilner@bursor.com

*Attorneys for Plaintiff*