Laurie Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
LEdelstein@jenner.com

Kate T. Spelman (CA Bar No. 269109)
Jenna L. Conwisar (CA Bar No. 341521)
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: (213) 239-5100
KSpelman@jenner.com
JConwisar@jenner.com

David Layden (IL Bar No. 6216417; *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
DLayden@jenner.com

*Counsel for Defendant OpenAI Global, LLC*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMARGO COUTURE, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>OPENAI GLOBAL, LLC,<br>Defendant. | Case No. 3:26-cv-03000-DMS-GC<br>The Honorable Dana M. Sabraw<br>**DEFENDANT OPENAI GLOBAL, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br>Courtroom: 13A<br>Date: November 2, 2026<br>Time: 10:30 a.m. |

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

# TABLE OF CONTENTS

INTRODUCTION ..... 1
ARGUMENT ..... 1
I. PLAINTIFF'S CONSENT BARS ALL OF HER CLAIMS ..... 1
A. Plaintiff Had Notice of OpenAI's Terms ..... 2
B. OpenAI's Privacy Policy Disclosed the Challenged Practices ..... 4
C. Plaintiff Consented to Meta and Google's Respective Terms ..... 5
II. PLAINTIFF'S ECPA AND CIPA § 631(a) CLAIMS FAIL ..... 6
A. Plaintiff Does Not Plausibly Allege Interception In Transit ..... 7
B. OpenAI's Consent Defeats the ECPA Claim ..... 7
III. PLAINTIFF'S CIPA § 632 CLAIM FAILS ..... 8
A. Plaintiff Does Not Allege That OpenAI Eavesdropped, Recorded, or Knowingly Aided Others ..... 8
B. Plaintiff's Query Topics Are Not Confidential Communications ..... 9
IV. PLAINTIFF'S COMMON LAW CLAIMS FAIL ..... 9
V. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND ..... 10
CONCLUSION ..... 10

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) .......... 3

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 2

*Bradshaw v. Lowe's Home Cntrs., LLC*,
No. 25-0742, 2026 WL 2519422 (S.D. Cal. Aug. 26, 2026) .......... 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 7

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 9

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 2, 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 10

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 6, 8

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 7

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 7, 10

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) .......... 10

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 2

*Pyankovska v. Abid*,
65 F.4th 1067 (9th Cir. 2023) .......... 7

*Rodriguez v. Google LLC*,
No. 20-4688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 7

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) .......... 3, 4

*Sussman v. Am. Broad. Companies, Inc*,
186 F.3d 1200 (9th Cir. 1999) .......... 7

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 8

*Washington v. Flixbus, Inc.*,
No. 25-0212, 2025 WL 1592961 (S.D. Cal. June 5, 2025) .......... 4, 10

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

## INTRODUCTION

Plaintiff's Opposition does not dispute the legal principle underlying OpenAI's motion: when a user receives adequate notice of a data practice and she then uses the service, she has consented to that use of her data. Instead, Plaintiff argues she was never told. But the FAC contains only conclusory statements that Plaintiff did not "consent." FAC ¶¶ 5, 10–11. Plaintiff does not allege she never saw the notices or declined to review the linked policies. Plaintiff instead attempts to rely on arguments regarding font size and hyperlinks. But the authorities she cites each involved a notice that failed to tell the user what her action meant. OpenAI's notices, in contrast, expressly do: "By using it, you agree," and 'By clicking 'Finish creating account,' you agree to our Terms and have read our Privacy Policy." And the policies to which these notices point disclose the vendor, analytics, cookie, and pixel practices that Plaintiff challenges and on which OpenAI's consent defense rests. Because Plaintiff was told in plain terms how her data would be handled and used ChatGPT anyway, she consented, and that consent defeats each of her claims.

Plaintiff's remaining arguments fare no better, and Plaintiff's claims fail on the merits for reasons independent of consent. Her ECPA and CIPA § 631(a) claims rest on contradictory allegations that do not plausibly allege Meta or Google intercepted anything in transit. Her CIPA § 632 claim pleads recording only by Meta and Google, and the crime-tort exception cannot reach an alleged commercial use of data. And Plaintiff's common-law claims cannot survive OpenAI's disclosures. Because Plaintiff has amended once already, and further amendments cannot cure these defects, dismissal should be with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CONSENT BARS ALL OF HER CLAIMS

Plaintiff does not dispute that valid consent defeats each of her claims. She argues instead that OpenAI has not shown notice of or assent to the relevant Terms and Privacy Policies and those documents do not disclose the practices she

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

challenges. Opp. at 2–14. Both arguments fail because those documents clearly and adequately provide requisite notice of the challenged data practices.

### A. Plaintiff Had Notice of OpenAI's Terms

The Chat Box. On the same screen where users enter their chats in the chat box, users without accounts see the statement: "ChatGPT is AI. By using it, you agree to our Terms & Privacy Policy," with both policies underlined and hyperlinked. Mot. at 3, 9–10. Plaintiff objects to the notice's placement ("buried at the bottom of the page" "well below the actual chat field"), size ("smaller than the rest of the . . . typeface"), and color ("not in a different color"). Opp. at 3. But "there is no bright-line test for finding that a particular design element is adequate." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156–57 (9th Cir. 2025). Courts "must instead consider how those design elements appear on the page." *Id.*

On this sparse page, graphics or excessive text do not distract from the notice, which states clearly use of the chat box is assent. That is what *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), requires: "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.* at 857–58 (internal quotations omitted). The notices in *Berman* failed because they never told users what action would constitute assent—a defect that "could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id.* at 858. OpenAI's notice does exactly that: users are "explicitly advised that [their use of the chat box] will constitute assent to the terms and conditions of an agreement." *Id.* at 857. Plaintiff's general skepticism of browsewrap agreements (Opp. at 3) is meritless; such notices are enforced. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (collecting cases).

The Account Creation Screen. Plaintiff claims OpenAI failed to establish when the account creation screenshot was captured. Opp. at 4. But Plaintiff does not allege whether she used ChatGPT with or without an account, let alone when she

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

created an account or what screens she saw. Thus, like the plaintiff in *Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979 (C.D. Cal. 2026), she has "failed to raise any plausible argument that these webpages actually differed from the versions of the webpages that [s]he viewed." *Id.* at 989. Plaintiff does not deny seeing either screen and is bound under one notice or the other.

Plaintiff's authorities do not help her. In *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117 (9th Cir. 2020), the "App Terms" link was gray and "below and smaller than all other text on the screen" and did "not inform users that they are bound by the Terms of Use." *Id.* at 119. A second link "visible only after a user scrolls to the bottom of the platform" was "obscured amongst the brightly colored icons on the Facebook platform," and set out in "substantially smaller" typeface than all other text on the screen. *Id.* (internal quotations omitted). Here, the notice sits directly above the "Finish creating account" button, amid no clutter or distractions, and tells users they "agree to our Terms and have read our Privacy Policy." Opp. at 7. The notice expressly informs users they are bound by account creation.

*Chabolla* involved a "multi-page enrollment process" with three separate screens to purchase a subscription to a packaged-deal access to gyms. 129 F.4th at 1159. On the first screen, users clicked a "continue" button on top of a notice informing users that by signing up for the gym membership services, consumers agreed to terms of use. But that screen "contain[ed] text in varying font sizes and images of people exercising." *Id.* at 1157. In addition, there were two options for users to sign up for an account: by entering their email or by signing up through Facebook. *Id.* The notice was below the "Sign up with Facebook" option, "on the periphery of where a user intending to use their email would be looking." *Id.* The court therefore concluded it was "not apparent that a user agrees or commits to anything on screen 1 other than sharing her email address" as "the notice seems to fade into the irrelevancy of other aspects of the page." *Id.* OpenAI's screen has no competing options or imagery. *Compare* Opp. at 5–6, *with id.* at 7.

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Plaintiff also argues the notice says she "ha[s] read" the Privacy Policy, not that she agrees to it. Opp. at 8. But consent under the ECPA and CIPA turns on notice of the practice, not contract formation; a user who represents she has read a policy disclosing the practice cannot claim ignorance of it. *See, e.g.*, *Washington v. Flixbus, Inc.*, No. 25-0212, 2025 WL 1592961, at *3–5 (S.D. Cal. June 5, 2025) (finding plaintiff consented to the challenged practices disclosed in the Privacy Policy where during the checkout process for purchasing a ticket through defendant's website she "declare[d] to have read the Privacy Policy"). Here, a specific click is required to create an account, and a click of the button "Finish creating account" establishes the user's agreement to the Terms and represents that the user read the Policy. In *Sisti*, the court considered a similar notice—"By providing a phone number and submitting this form . . . I also agree to Bosley's [Terms of Service] and acknowledge the [Privacy Policy]"—and determined the plaintiff had consented to the challenged data practices disclosed in the Privacy Policy by submitting the form. 831 F. Supp. 3d at 990. Plaintiff's cases, in contrast, involved prompts merely to "see" or "review" terms, with no action tied to them. Opp. at 8–9.

### B. OpenAI's Privacy Policy Disclosed the Challenged Practices

Plaintiff's narrow reading of the Privacy Policy cannot be reconciled with the Policy's entire text. Plaintiff argues that although the Policy lists OpenAI's own purposes, none "ha[s] anything to do with sharing users' query topics with other technology companies for targeted advertising." Opp. at 10. Plaintiff confuses how OpenAI uses Personal Data, its disclosure of Personal Data to vendors as part of the disclosed practices, and how Facebook and Google may use data they collect as part of their disclosed practices.

As Plaintiff acknowledges, OpenAI's Policy discusses how OpenAI uses Personal Data it collects. Opp. at 10. Those disclosed uses include personalizing ads users see and measuring the effectiveness of ads on its Services. RJN, Ex. 5 at 4.

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

With respect to sharing of data with third parties, the Policy expressly notifies users that OpenAI discloses "Personal Data" to "vendors" and "service providers," including providers of "web analytics services,"[1] for marketing analytics purposes, not targeted advertising. The Cookie Notice to which the Policy points does the same, describing how pixels and cookies are used for "analytics" and "marketing performance." Mot. at 9. The Policy also discloses: "Some of these partners may receive information through cookies and similar technologies." RJN, Ex. 5 at 6.

Plaintiff points to statements that OpenAI "limit[s] vendors to processing data '[p]ursuant to our instructions,'" and OpenAI does not "sell" or "share" Personal Data for cross-contextual behavioral advertising. Opp. at 11 (quoting Ex. 6 at 13). Plaintiff suggests these statements fail to inform users that OpenAI discloses Personal Data to OpenAI's partners like Facebook and Google, who use the data for targeted advertising. Not so. These statements, which accurately reflect OpenAI's practices, address OpenAI's use and disclosure of data it collects. They do not address how *Facebook and Google use data they may collect.* As discussed in Section I.C., Facebook and Google expressly disclose their use of collected data for targeted advertising purposes. Finally, the de-identification language she claims "leaves users with the impression that they cannot be identified," Opp. at 11–12, again addresses only how OpenAI uses Personal Data, not how Personal Data is disclosed to vendors as part of the disclosed practices.

### C. Plaintiff Consented to Meta and Google's Respective Terms

Plaintiff alleges she is a Facebook and a Google account holder and was an active user at all relevant times. FAC ¶¶ 8–9. She does not dispute that courts consistently hold that users are bound by those companies' terms. Opp. at 12–13;

---

[1] Plaintiff's argument that Exhibit 5 post-dates the Complaint, Opp. at 10 n.1, is immaterial: the June 2025 version (Ex. 6) contains the same vendor provision and definition of Personal Data. *Id.* at 10–11. The May 2026 "Marketing Partners" addition concerns OpenAI's own marketing and does not retract those disclosures.

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

Mot. at 11–12.[2] Her contention that those companies' terms do not "explicitly notify" her is meritless. Opp. at 13. Meta's Terms state Meta uses "your personal data to help determine which personalized ads to show you," and its Privacy Policy discloses it collects information from "partners, measurement vendors, marketing vendors and other third parties" about "your information and activities on and off our Products . . . like through . . . the Meta Pixel." Mot. at 4–5. Google states that when websites "integrate our services, these sites and apps share information" that Google uses to "personalize content and ads you see on Google and on our partners' sites and apps." *Id.* at 5. It is irrelevant that these policies do not mention "health or financial information" or "AI chatbot[s]." Opp. at 14. Plaintiff's subjective belief about how her data would be shared does not negate express disclosures.

## II. PLAINTIFF'S ECPA AND CIPA § 631(a) CLAIMS FAIL

Plaintiff concedes she does not assert a violation of CIPA § 631(a)'s first clause (telephone wiretapping). Her § 631(a) claim rests on OpenAI's alleged aiding of Meta's and Google's alleged violations of the second (eavesdropping) and third (use) clauses. Opp. at 17. But without a predicate violation of the first or second clause, there can be no violation under the third or fourth (aiding and abetting) clauses. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023). Her ECPA theory also depends on OpenAI's alleged "procur[ing]" of interception by others. Opp. at 17. Both claims thus require facts showing Meta or Google intercepted a communication in transit.[3] But the FAC alleges none, and these claims fail on their merits, independent of consent.

---

[2] Plaintiff's only criticism of this case law misses the point. Plaintiff argues it does not let "a website . . . borrow a third party's contract to supply consent to its own disclosures," Opp. at 14. But her consent to the alleged interceptors' own practices defeats the aiding-and-abetting predicate regardless of who is sued.

[3] Plaintiff emphasizes she alleged interception of *content*, Opp. at 14–15. The failure is to allege interception *in transit*. Mot. at 12–15 (ECPA); *id.* at 18–19 (CIPA).

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**A. Plaintiff Does Not Plausibly Allege Interception In Transit**

Interception requires acquisition "during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (ECPA); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (same under CIPA); Mot. at 12 n.4. Plaintiff argues the FAC "describes how the Pixels load onto the browser and then capture and transmit the user's communications as the user enters the information." Opp. at 16. But the FAC contains no allegations explaining how Meta or Google read the content in transit. *See, e.g.*, FAC ¶¶ 63–64, 71. Courts reject such allegations as insufficient to allege interception in transit. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) (requiring "factual allegations regarding the method, or nature, of interception"); *Rodriguez v. Google LLC*, No. 20-4688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough"); Mot. at 14–15 (collecting cases). Further, Plaintiff ignores that the FAC alleges Meta and Google view the information *after receipt*, undercutting any claim they acquired the information in transit. *See* FAC ¶¶ 65, 72.

**B. OpenAI's Consent Defeats the ECPA Claim**

Additionally, where, as here, "at least one party to the communication has given prior consent," *Pyankovska v. Abid*, 65 F.4th 1067, 1074–75 (9th Cir. 2023), there is no ECPA violation. Plaintiff alleges OpenAI chose to install the Pixel and Google Analytics. FAC ¶¶ 28, 60. OpenAI's consent thus suffices unless the crime-tort exception applies. It does not. The exception asks not "whether the interception itself violated another law" but "whether the purpose for the interception—its intended use—was criminal or tortious," *Sussman v. Am. Broad. Companies, Inc*, 186 F.3d 1200, 1202 (9th Cir. 1999). A plaintiff must allege "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). The FAC alleges a commercial purpose: "targeted advertising." FAC ¶ 101. The

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

exception is inapplicable. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022).

Plaintiff cites cases holding using intercepted data for advertising may be an independent privacy tort. Opp. at 17–18. But that theory collapses the exception into the underlying claim: any interception for commercial gain could be recast as intrusion upon seclusion, nullifying one-party consent. And because OpenAI's disclosures defeat the privacy torts, no independent tortious purpose is pleaded.

**III. PLAINTIFF'S CIPA § 632 CLAIM FAILS**

**A. Plaintiff Does Not Allege That OpenAI Eavesdropped, Recorded, or Knowingly Aided Others**

Plaintiff insists she asserts a direct § 632 claim because she "alleges in the alternative that Defendant used the Third Parties' trackers to record users' communications with ChatGPT." Opp. at 18. But the paragraphs Plaintiff cites do not allege OpenAI recorded anything. *Id.* (citing FAC ¶¶ 28, 63, 99–100, 120, 133–135). Plaintiff alleges "*Meta* and *Google* eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device in violation of § 632 of CIPA." FAC ¶ 126 (emphasis added); *see also id.* ¶ 127. Plaintiff does not explain how OpenAI could "eavesdrop" on its own conversation. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024).

Plaintiff's unpleaded derivative theory fares no better. She concedes that § 632 "does not expressly provide for derivative liability." Opp. at 19. And even assuming courts may import aiding-and-abetting principles, Plaintiff must allege OpenAI acted "with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense." *Id.* The FAC alleges only that OpenAI installed widely used analytics tools and "intended to help Meta and Google learn some meaning of the content" of queries. FAC ¶¶ 28, 116. Knowing that a tool supports advertising is not knowing that its use is unlawful;

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

targeted advertising is "routine commercial behavior." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

**B. Plaintiff's Query Topics Are Not Confidential Communications**

Plaintiff says her communications are confidential because she "had a reasonable expectation" they "would remain confidential, and that Defendant would not install wiretaps." Opp. at 20 (quoting FAC ¶ 134). As a threshold matter, Plaintiff alleges only that her *query topics* were disclosed, not any *communications*. In any event, Section 632 asks whether she had an "objectively reasonable expectation" that the communication was not being "overheard or recorded," and a communication is not confidential where the parties "may reasonably expect that the communication may be overheard or recorded." Mot. at 21. Having agreed to Terms and a Privacy Policy that informs users data may be disclosed to analytics vendors through cookies and pixels (*supra* Section I), Plaintiff could not reasonably expect otherwise. Plaintiff's retort that the disclosures concern OpenAI "and its agents," not "strangers," Opp. at 20, ignores that partners "may receive information through cookies and similar technologies." RJN, Ex. 5 at 6. Plaintiff cites no case holding that subject-matter sensitivity makes a communication confidential despite an express disclosure to the user that it may be shared.

## IV. PLAINTIFF'S COMMON LAW CLAIMS FAIL

Plaintiff says she has pleaded a reasonable expectation of privacy because of "(1) the sensitive nature of the communications, and (2) the immense amount of data collected." Opp. at 22. But no reasonable expectation survives OpenAI's disclosures, and subject-matter sensitivity cannot override a user's notice of how her prompts are handled. Plaintiff's authority, *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023), does not support Plaintiff's argument and does not even address privacy and intrusion upon seclusion claims.

The alleged intrusion also is not highly offensive. Plaintiff argues she would not have shared health and financial information "if she knew it would be

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

disseminated by Google and Meta." Opp. at 23. But that is the exact practice each company discloses. Labeling the information "sensitive and confidential," Opp. at 24, does not change the analysis. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (Opp. at 22) is distinguishable because the tracking there contradicted the defendant's own representations to users. *Bradshaw v. Lowe's Home Cntrs., LLC*, No. 25-0742, 2026 WL 2519422 (S.D. Cal. Aug. 26, 2026) (Sabraw, J.) is inapposite because this Court declined to find defendant's data collection was not highly offensive as a matter of law where the "Privacy Statement represented it would only share personal information with third parties 'with [users'] consent,' and Plaintiffs never consented." *Id.* at *4. Here, the Privacy Policy makes no such claim, and Plaintiff did consent.

## V. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

No amendment can save Plaintiff's FAC, and it should be dismissed with prejudice. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Amendment is futile where a plaintiff "consented to the conduct at issue." *Lakes*, 777 F. Supp. 3d at 1060. Courts in this District have dismissed with prejudice on that ground. *See Washington*, 2025 WL 1592961, at *6. Consent turns on notices and policies whose existence Plaintiff does not dispute and on her own allegations that she uses ChatGPT, Facebook, and Google. FAC ¶¶ 7–9. New allegations cannot change what those documents say. Plaintiff has already amended once, after OpenAI's first motion. "[L]iberality in granting leave to amend is subject to several limitations," including "futility." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). A court's discretion to deny leave "is particularly broad where plaintiff has previously amended the complaint." *Id.* Leave to amend is not warranted here.

## CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court dismiss Plaintiff's FAC with prejudice.

Respectfully submitted,

Dated: October 26, 2026

JENNER & BLOCK LLP

By: */s/ Laurie Edelstein*

Laurie Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
LEdelstein@jenner.com

Kate T. Spelman (CA Bar No. 269109)
Jenna L. Conwisar (CA Bar No. 341521)
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: (213) 239-5100
KSpelman@jenner.com
JConwisar@jenner.com

David Layden (IL Bar No. 6216417; *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
DLayden@jenner.com

*Counsel for Defendant OpenAI Global, LLC*